[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12312
Non-Argument Calendar
_____

Agency No. A073-724-890


CLEMENTE LOPEZ GOMEZ,
a.k.a. Emilio Lopez,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 21, 2014)


Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

Clemente Lopez Gomez, a native and citizen of Mexico, seeks review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from the Immigration Judge's ("IJ") denial of his withholding of removal application. On appeal, Gomez argues that the IJ's and BIA's conclusion that he is unentitled to withholding of removal is not supported by substantial evidence. He contends that the evidence shows both that he was persecuted in the past and that he more likely than not will be persecuted in the future on account of his political opinion or membership in a particular social group. Gomez also asserts that he presented a successful pattern-or-practice claim and that the BIA and IJ failed to undertake a reasoned consideration of the record.

We review subject matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction over claims about which a petitioner has failed to exhaust his administrative remedies. *Id.*

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion. Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).

2

Factual determinations are reviewed under "the highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). "To reverse . . . fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

The BIA must consider all evidence that an applicant has submitted but is not required to address specifically each claim made by the petitioner or each piece of evidence presented. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006). The BIA must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* "Our limited review of whether the [BIA] gave reasoned consideration to a petition does not amount to a review for whether sufficient evidence supports the decision of the [BIA], and we lack jurisdiction to review petitions that contest the weight and significance given [by the BIA] to various pieces of evidence." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir.) (quotation omitted), *petition for cert. filed*, No. 13-323 (Sept. 10, 2013).

3

The Attorney General is required to grant withholding of removal to an alien who establishes that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. *Mendoza*, 327 F.3d at 1287; *see also* Immigration and Nationality Act ("INA") § 241(b)(3), 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted . . . upon his return to the country in question." *Mendoza*, 327 F.3d at 1287.

Evidence of past persecution on account of a protected ground creates a presumption that the alien's life or freedom would be threatened upon return to his country, but this presumption may be rebutted if country conditions have fundamentally changed or the person could safely relocate within the country. 8 C.F.R. § 208.16(b)(1)(i)(A)-(B). If, however, the alien does not establish past persecution, he bears the burden of showing that, more likely than not (1) he would be persecuted in the future on account of one of the five enumerated grounds; and (2) he could not avoid this future threat to his life or freedom by relocating if, under all the circumstances, it would be reasonable to expect relocation. *Id.* § 208.16(b)(2); *see also Mendoza*, 327 F.3d at 1287. The alien can establish future persecution by showing either that he will, more likely than not, be singled out for persecution or that (1) a pattern or practice, in the country in question, exists "of persecution of a group of persons similarly situated to the applicant on account of"

4

a protected ground, and (2) he is included or identified with that group "such that it is more likely than not that his . . . life or freedom would be threatened." 8 C.F.R. § 208.16(b)(2)(i)-(ii).

Although the term is not defined by the INA, we have said that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted). Still, serious physical injury is not required to prove past persecution where the petitioner demonstrates repeated threats combined with other forms of severe mistreatment. *See De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008).

We have also said that "a threatening act against another [is] evidence that the petitioner suffered persecution where that act concomitantly threatens the petitioner." *Id.* at 1009 n.7. But threats or harm to a petitioner's family members do not "constitute or imply persecution of the petitioner where there has been no threat or harm directed against the petitioner." *Cendejas Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).

While a voluntary return to one's home country does not foreclose a finding that the petitioner feared persecution, it weakens his claim. *De Santamaria*, 525 F.3d at 1011. We have also considered the length of time between the alleged past

persecution and the date of the alien's potential removal in assessing the risk of future persecution. *See Sepulveda*, 401 F.3d at 1232 (four years had passed since the petitioner left the country after participating, in a leadership role, in a nonviolent movement, and the evidence did not show that the petitioner's notoriety as an activist would outlast her absence).

Upon review of the record and consideration of the parties' briefs, we deny Gomez's petition for review.

Here, as a threshold matter, Gomez failed to exhaust his pattern-or-practice claim because he did not raise it before the BIA. *See Amaya-Artunduaga*, 463 F.3d at 1250. Accordingly, we lack jurisdiction to review it. *See id.* As the BIA adopted the IJ's reasoning, we will review both the BIA's and IJ's decisions in our analysis of Gomez's remaining, properly exhausted claims. *See Al Najjar*, 257 F.3d at 1284.

Substantial evidence supports the determination that Gomez failed to establish he was entitled to withholding of removal. First, the record does not compel a conclusion that Gomez suffered past persecution; therefore, he is entitled to no presumption of future persecution. *See Mendoza*, 327 F.3d at 1287. Gomez testified that, because he was a member of the Confederacion Nacional Campesina ("CNC"), he received three threats from men associated with a rival political organization -- the Red Internacional Indigena Oaxacana ("RIIO") -- over a two-

month period in 2003 while he was living in his hometown of San Juan Mixtepec. He stated that, while RIIO men verbally threatened him, pointed a gun at his chest, and shot at his feet to scare him, never was he actually harmed. It is significant that, after those incidents, he resided in Mexico for almost a year without anything more happening.

Under the law, persecution is an extreme concept. Gomez's evidence does not compel a finding that his mistreatment exceeded "a few isolated incidents" of intimidation: acts that failed to reach the level of persecution. *See Sepulveda*, 401 F.3d at 1231. Although we have written that physical injury is not required for a showing of persecution when the petitioner has received multiple threats, the threats must be combined with other forms of serious mistreatment. *See De Santamaria*, 525 F.3d at 1009. Gomez testified that the only alleged instances of persecution he faced while in Mexico were the three threats; so, he failed to show other kinds of severe mistreatment.

Furthermore, while threats and harm to others can be evidence that the petitioner suffered past persecution, the acts must concomitantly threaten the petitioner. *See De Santamaria*, 525 F.3d at 1009 n.7; *see also Cendejas Rodriguez*, 735 F.3d at 1308. Gomez submitted that one of his brothers was the president of the CNC and faced constant threats from the RIIO, another was a former secretary of the CNC and was kidnapped on two occasions, a third was beaten, and his

7

cousin was murdered; but none of those acts were done to threaten Gomez. While Gomez also made conflicting statements about whether the RIIO -- while Gomez was living in the United States -- beat Gomez's father in 2009 or 2010 in an effort to gain information about Gomez's whereabouts, the record does not compel a finding that this incident represented a threat to Gomez and rose to the level of persecution. *See Mendoza*, 327 F.3d at 1287. In sum, substantial evidence supports the IJ's and BIA's decision on past persecution.

Second, substantial evidence also supports the IJ's and BIA's decision that Gomez would not (more likely than not) be singled out for persecution upon return to Mexico. Gomez provided evidence that two of his brothers held high-ranking posts within the CNC, while he participated in the organization as a low-level messenger. He testified that his brothers have faced threats and violence from the RIIO since he left Mexico in 2004, and he argued that he would be treated the same if he returned. This evidence does not compel the conclusion that Gomez has a well-founded fear of future persecution if he returns to Mexico. *See Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174-77 (11th Cir. 2008) (evidence that petitioner's differently-situated brothers were persecuted for their political activities did not compel the conclusion that petitioner would be treated the same).

Other facts also support the BIA's and IJ's conclusion. Gomez testified that he left Mexico in mid-2004; so nearly ten years have passed since his departure.

8

We noted in *Sepulveda* that there was no evidence that a visible participant in a social movement would still face persecution after a four-year absence. 401 F.3d at 1232. It seems even more unlikely that Gomez, as a mere messenger, would be persecuted ten years after his departure. Moreover, Gomez willingly returned to Mexico for a visit in 2005, which undermines his claim that he still faces persecution. *See De Santamaria*, 525 F.3d at 1011. Gomez stayed with his grandmother in Mexico City for most of his 2005 visit to Mexico, and he was not injured during that time, nor was his liberty restricted. Accordingly, he did not establish that he could not relocate (away from San Juan Mixtepec) to another part of Mexico if he were removed. Therefore, the record does not compel a finding that Gomez would (more likely than not) face persecution upon return to Mexico. *See Mendoza*, 327 F.3d at 1287.

The BIA and IJ reached their conclusions based on reasoned consideration of Gomez's claim. While Gomez asserts that the BIA and IJ overlooked certain facts, they are not required to address each piece of evidence in their analysis. *See Tan*, 446 F.3d at 1374. Gomez's argument that the BIA mischaracterized his evidence when it stated that he had "lived" in Mexico City in 2005 is meritless. The BIA's characterization of Gomez's 50-day stay in Mexico City is reasonable and reasoned, even if Gomez would classify it as a "visit." Nothing in the BIA's or IJ's reasoning or discussion of the evidence undermines the conclusion that they

9

considered Gomez's arguments and evidence.  The BIA and IJ made adequate findings for this Court to see that they carefully considered the record.  *See id.* Gomez really asks just for a reweighing of the evidence, which is not the purpose of reasoned consideration review.  *See Perez-Guerrero*, 717 F.3d at 1232.

In sum, substantial evidence supports the BIA's and IJ's reasoned determination that Gomez was not persecuted in the past and would not probably be persecuted in the future.  We deny Gomez's petition.

**PETITION DENIED.**