[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14387
_____

Agency No. A078-257-907

JOSE CENDEJAS RODRIGUEZ,
a.k.a. Jose Aguilar Rodriguez,
a.k.a. Jose Zendejas Rodriguez,
a.k.a. Jose Cendejas,
a.k.a. Jose Rodriguez,
a.k.a. Jose Ascencion Aguilar-Rodriguez,
a.k.a. Jose Zendjos-Rodriguez,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 19, 2013)

Before HULL and HILL, Circuit Judges, and MOTZ,[*] District Judge.

PER CURIAM:

Jose Ascencion Cendejas Rodriguez, a native and citizen of Mexico, seeks review of the Board of Immigration Appeals's ("BIA") decision, affirming the Immigration Judge's ("IJ") denial of his application for withholding of removal. After careful review, and with the benefit of oral argument, we deny the petition.

## I.  BACKGROUND

### A.    Reinstatement of the Prior Order of Removal

In 2008, Cendejas Rodriguez illegally reentered the United States for at least the third time.  He had illegally entered the United States in 1996 and 2001.  He also had once been removed, pursuant to a removal order entered on July 15, 2000. Following his 2008 illegal entry, the Department of Homeland Security reinstated the 2000 removal order, pursuant to Immigration and Nationality Act ("INA") § 241(a)(5), 8 U.S.C. § 1231(a)(5).

Because of the 2008 reinstatement of his 2000 removal order following his 2008 illegal reentry, Cendejas Rodriguez concedes that he was ineligible for and could not apply for asylum.  See INA § 241(a)(5), 8 U.S.C. § 1231(a)(5); Fernandez-Vargas v. Gonzales, 548 U.S. 30, 34-35 & n.4, 126 S. Ct. 2422, 2426 &

---

[*]Honorable J. Frederick Motz, United States District Judge for the District of Maryland, sitting by designation.

2

n.4 (2006) (providing that, although an alien may not seek asylum following the reinstatement of a prior removal order, he may still seek withholding of removal). Thus, this appeal involves only Cendejas Rodriguez's application for withholding of removal.

## B.    Withholding of Removal

At some point between 2008 and 2011, Cendejas Rodriguez was located and an asylum officer interviewed Cendejas Rodriguez and determined that he had a reasonable fear of persecution.  Thus, in January 2012, the asylum officer referred Cendejas Rodriguez to an IJ for withholding-of-removal proceedings, pursuant to 8 C.F.R. § 208.31(e).  In February 2012, Cendejas Rodriguez also filed an application for withholding of removal based on his membership in a particular social group.[1]

We review Cendejas Rodriguez's application, evidence submitted in support of his application, and his testimony at his withholding-of-removal hearing: Cendejas Rodriguez's family owned a ranch, consisting of 40 square miles of farmland in the state of Michoacán de Ocampo, Mexico.  However, Cendejas Rodriguez did not personally own any of the land.  The family had previously used

---

[1]In his application, Cendejas Rodriguez also sought relief under the Convention Against Torture ("CAT").  However, Cendejas Rodriguez did not challenge the denial of CAT relief before the BIA or in his brief to this Court.  Therefore, we do not address his CAT claim.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009) (deeming abandoned petitioner's CAT claim to which petitioner's brief made only a "passing reference").

3

the land to grow sugar cane, mangos, and tomatoes and to raise cattle. The land was fertile and produced large quantities of fruit.

As a child, Cendejas Rodriguez helped his father work the farmland. When Cendejas Rodriguez was eight or nine, men attempted to enter Cendejas Rodriguez's family's home at night. The men ran away after Cendejas Rodriguez's grandfather fired two shots. Cendejas Rodriguez later learned that the people who entered his home were associated with the Toledos, a Mexican family involved in drug-trafficking.

In 1993, Erasto Toledo ("Erasto") asked Cendejas Rodriguez's father to grow illegal drugs for Erasto on the Cendejas Rodriguez family's farmland and to then transport the drugs to the United States. Cendejas Rodriguez's father refused, producing tension between the Cendejas Rodriguez and Toledo families.

In 1996, Cendejas Rodriguez's father told him that he believed his family was in danger, and thus, he sent the family to the United States. Cendejas Rodriguez's father remained in Mexico. On November 20, 1996, Erasto and his son, Israel, murdered Cendejas Rodriguez's father. Cendejas Rodriguez was in the United States at the time of his father's death and did not return to Mexico until 2000.

4

After the murder, Israel fled to the United States.  A detective hired by Cendejas Rodriguez's grandmother found Israel, and Israel was extradited to Mexico.  Mexican officials jailed Israel, but did not prosecute him and eventually released him.  In addition, the Mexican police arrested Erasto, but immediately released him without prosecuting him.  The Toledo family developed "a vendetta" against Cendejas Rodriguez and his family because of Erasto's and Israel's arrests and Israel's extradition.

In 2000, Cendejas Rodriguez returned to Mexico, and he discovered that the ranch was "destroyed."  He saw his mother, who stayed by herself.  Associates of the Toledo family told Cendejas Rodriguez that Erasto was looking for his family. The associates asked Cendejas Rodriguez if he had returned to Mexico for vengeance.  In his testimony before the IJ, Cendejas Rodriguez did not state what his reply was to them.  Cendejas Rodriguez remained in Mexico for 15 days.  He returned to the United States in 2001.

In 2008, Cendejas Rodriguez returned to Mexico to see his mother and the farmland and he discovered "that people were using" the farmland.  His mother warned Cendejas Rodriguez to not remain in Mexico for long.  Thus, Cendejas Rodriguez remained in Mexico for only 15 days.  Cendejas Rodriguez returned to

5

the United States that same year and has not returned to Mexico since.  There is no indication of any threats or harm to his mother who has remained in Mexico.

In August 2011, Cendejas Rodriguez's uncle, Aquilino Cendejas, was kidnapped and tortured by three armed associates of the Toledo family.  After Cendejas Rodriguez's family paid part of a negotiated ransom amount, the kidnappers released the uncle.  If the ransom had not been paid, the kidnappers would have killed Cendejas Rodriguez's uncle.

Alejandro Rodriguez Garcia, Cendejas Rodriguez's cousin, had witnessed Cendejas Rodriguez's father's murder.  Rodriguez Garcia had testified against Erasto in connection with his arrest warrant for the murder of Cendejas Rodriguez's father.  In 2011, Rodriguez Garcia was killed and left underneath his own vehicle to make his death appear to be an accident.

In 2012, Cendejas Rodriguez believed that the Toledo family was currently using Cendejas Rodriguez's family's land to grow marijuana.  If Cendejas Rodriguez returned to Mexico, he feared the Toledo family due to: (1) his opposition to the Toledos' confiscation and use of Cendejas Rodriguez's family's farmland for production of illegal drugs; (2) Cendejas Rodriguez's family's involvement in Erasto's and Israel's arrests; and (3) Cendejas Rodriguez's family's not having paid the whole ransom amount after the uncle's kidnapping.  Cendejas

6

Rodriguez testified that, if he returned to Mexico, he wanted to do farm work. However, he did not want to return to his family's land because of his fear.

After receiving threats from drug traffickers, most of Cendejas Rodriguez's family members fled to the United States, and at least three of his family members are now U.S. citizens. The Toledo family targeted other families in Mexico whose land the Toledo family wanted.

## C.    Post-Hearing Brief

In a post-hearing brief, Cendejas Rodriguez argued that he was eligible for withholding of removal based on his persecution on account of his membership in two particular social groups. He defined his particular social groups as:

(1) Mexican farmers in the State of Michoacán, owning . . . farmland suitable for producing high yields of illegal drug crops (cannabis), who are subject to Drug Trafficking Organizations' (DTOs') extortion tactics on account of their ownership of said farmland and unwillingness to collaborate with the DTOs by refusing to grow and produce illegal drug crops or participate in illegal drug trafficking

(2) Family members of a family who has pursued Mexican law enforcement authority to prosecute associates of a Mexican DTO for the murder or assassination of a family member[.]

## D.    Decisions of the IJ and the BIA

The IJ credited Cendejas Rodriguez's hearing testimony, but denied withholding-of-removal relief. First, the IJ determined that Cendejas Rodriguez

7

failed to present evidence of past persecution because he was never harmed, and he had lived in the United States for most of his life.

Second, the IJ determined that Cendejas Rodriguez failed to show a clear probability of future persecution on account of his membership in a particular social group. The IJ found that Cendejas Rodriguez had not established that he was a former landowner or the current owner of the farmland seized by the Toledo family. The IJ observed that, under this Court's precedent, neither of Cendejas Rodriguez's proposed social groups constituted a protected social group under the INA. Further, Cendejas Rodriguez had not shown that the Toledo family would target him "on account of" his proposed social groups. Cendejas Rodriguez appealed the IJ's decision to the BIA.

The BIA dismissed Cendejas Rodriguez's appeal. The BIA determined that the IJ correctly found insufficient evidence to support Cendejas Rodriguez's claim that he was persecuted. The BIA first explained that Cendejas Rodriguez did not show that any harm or mistreatment he described rose to the level of persecution. Although his father and cousin were murdered and his uncle was kidnapped, Cendejas Rodriguez did not claim to have been physically harmed himself. The BIA concluded that, under the circumstances, harm to Cendejas Rodriguez's family members did not constitute persecution of the applicant.

8

The BIA agreed with the IJ's decision that Cendejas Rodriguez failed to show that it is more likely than not that he will face future persecution. Cendejas Rodriguez's claim lacked the required nexus between any feared harm in Mexico and a protected ground. The BIA concluded that Cendejas Rodriguez failed to show that his proposed social group—comprised of members of a family targeted by a drug-trafficking organization because a family member sought criminal justice against a member of the drug-trafficking organization—was recognized as a group in Mexican society, as required for the group to qualify as a particular social group. In addition, despite Cendejas Rodriguez's claim that he was a member of particular social group described as landowners in a Mexican state, Cendejas Rodriguez had not shown that he owned substantial farmland in Mexico. Finally, he presented no evidence that the Toledo family or associates of a drug-trafficking organization were motivated to harm him due to his affiliation with either of his two proposed social groups. Cendejas Rodriguez filed this petition for review.

## II. DISCUSSION

On appeal, Cendejas Rodriguez argues that: (1) the IJ and BIA erred in determining that he was not a member of a particular social group; and (2) the IJ and BIA erred in determining that he failed to establish past persecution or that he

9

would more likely than not be persecuted on account of his membership in a particular social group.

## A.    Standard of Review

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, because the BIA agreed with the IJ's findings, and made additional observations, we review both decisions. Id.

We review the BIA's factual findings to determine whether they are supported by substantial evidence. Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). Under the substantial evidence standard, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. at 1027. We may reverse the BIA's factual findings only when the record compels a reversal. Id. We review the IJ's and the BIA's legal conclusions de novo. Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).

## B.    Withholding of Removal

To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in his country of origin on account of the alien's "race, religion, nationality, membership in a particular social group, or

10

political opinion." See INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The applicant must demonstrate that he would "more likely than not" be persecuted upon being returned to his country of origin. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (internal quotation marks omitted).

An alien may satisfy his burden of proof for withholding of removal in two ways. First, an alien may establish past persecution based on a protected ground. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437 (11th Cir. 2004). Past persecution creates a rebuttable presumption that the alien's life or freedom would be threatened upon return to his country. Id. Second, an alien is entitled to withholding of removal if he establishes that it is more likely than not that he would face a future threat to his life or freedom upon removal due to a protected ground. Id.

"[We have] held that persecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation . . . mere harassment is not persecution." Ruiz v. Gonzales, 479 F.3d 762, 766 (11th Cir. 2007) (internal quotation marks omitted). In determining whether an alien suffered past persecution, the IJ must consider the "cumulative effect" of the incidents. See id.

In this case, substantial evidence supports the agency's determination that Cendejas Rodriguez did not establish either past persecution or that he will "more

11

likely than not" be persecuted based on his membership in a particular social group if returned to Mexico. In addition, Cendejas Rodriguez cannot show that the record compels a contrary conclusion. We explain why.

## C.    Past Persecution

First, Cendejas Rodriguez did not demonstrate past persecution of him. We have held that threats or harm to a person other than the alien may constitute evidence that the alien suffered past persecution "where that act concomitantly threatens the petitioner." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1009 n.7 (11th Cir. 2008). However, we have not yet expressly said that threatening acts or harm against other family members does not constitute or imply persecution of the petitioner where there has been no threat or harm directed against the petitioner. We now say so as explained below.

The BIA has concluded that harm to an applicant's family members does not serve to establish persecution of the applicant personally. In re A-K-, 24 I. & N. Dec. 275, 278-79 (BIA 2007). The BIA, in its decision In re A-K-, explained that "[a]utomatically treating harm to a family member as being persecution to others within the family is inconsistent with the derivative asylum provisions," and noted that the INA "does not permit derivative withholding of removal under any circumstances." Id. The BIA recognized that there may be a case where a person

12

persecutes a family member "with the intended purpose of causing emotional harm to the applicant" but that "persecution would not be 'derivative' as the applicant himself would be the target of the emotional persecution that arises from physical harm to a loved one." Id. at 278. The pattern of persecution must be "tied to the applicant personally." Id.

In addition, other circuit courts have indicated that a petitioner cannot show past persecution based on threatening or harmful acts against family members where the petitioner has not been directly threatened or harmed. See Zhou Ji Ni v. Holder, 635 F.3d 1014, 1018-19 (7th Cir. 2011) (explaining that an asylum applicant cannot rely on the arrest and beating of his parents for their religious beliefs and "derivative persecution" to establish that he was subjected to past persecution, and noting applicant "did not argue that his family was seized and beaten on account of his Christianity in an effort to persecute him"); Tamang v. Holder, 598 F.3d 1083, 1087, 1091-93 (9th Cir. 2010) (recognizing, in a withholding-of-removal case, that harm to an applicant's close family members may be relevant to addressing whether the applicant suffered past persecution, but "we have not found that harm to others may substitute for harm to an applicant, such as Tamang in this case, who was not in the country at the time he claims to have suffered past persecution" and who "was not directly impacted"); Jalloh v.

13

Gonzales,  418 F.3d 920, 923 (8th Cir. 2005) (providing that, in order for acts of violence against family members to constitute persecution against the petitioner, "[t]here must be evidence of a pattern of persecution on account of a protected ground, and the persecution must be tied to the petitioner"); Ahmadshah v. Ashcroft, 396 F.3d 917, 920 (8th Cir. 2005) (finding past persecution "tied to the petitioner" where petitioner Ahmadshah's sister was murdered for her Christian activities, Ahmadshah was beaten because of his Christian religious beliefs, and the murder "was coupled with a threat directed at Ahmadshah himself"); Tamas-Mercea v. Reno, 222 F.3d 417, 424 (7th Cir. 2000) (upholding the agency's finding that the petitioner was not subject to past persecution when his father, grandfather, and uncle were arrested for opposing government policies).

Based on our decision in De Santamaria and the BIA's decision in Matter of A-K-, we conclude that Cendejas Rodriguez has not shown past persecution based on the acts committed on his father, cousin, and uncle because he did not show any acts that threatened or harmed him personally.  Because Cendejas Rodriguez's testimony established that he was never personally threatened, harmed, or mistreated while in Mexico or during later visits to Mexico, he did not show past persecution.  In addition, Cendejas Rodriguez was in the United States when his

14

father and cousin were murdered and when his uncle was kidnapped and thus he was not even in Mexico at the time he claims to have suffered past persecution.

## D.    Future Persecution

Second, Cendejas Rodriguez did not demonstrate that he will "more likely than not" be persecuted if returned to Mexico based on his membership in a particular social group.  An alien must present "specific, detailed facts showing a good reason to fear that he or she will be <u>singled out</u> for persecution on account of [a protected ground]." <u>Najjar</u>, 257 F.3d at 1287 (internal quotation marks omitted). "[E]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground."  <u>Ruiz</u>, 440 F.3d at 1258 (citing <u>Sanchez</u>, 392 F.3d at 438 (holding that the petitioner failed to establish a nexus between her political opinion and the alleged persecution by a guerrilla group because the evidence established that she was harassed due to her refusal to cooperate with the group)).

"A particular social group" refers to persons who share a common, immutable characteristic "that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences."  <u>Castillo-Arias v. U.S. Att'y Gen.</u>, 446 F.3d 1190, 1193,

15

1196 (11th Cir. 2006) (internal quotation marks omitted) (discussing and adopting the BIA's definition of "particular social group"). "The risk of persecution alone does not create a particular social group within the meaning of the INA." Id. at 1198. To qualify as a particular social group under the INA, a group must not be "too numerous or inchoate." Id.

Cendejas Rodriguez claimed membership in the following two particular social groups: (1) landowners of substantial farmland in Mexico; and (2) members of a family targeted by a drug-trafficking organization because a family member sought criminal justice against a member of the drug-trafficking organization.

The IJ and BIA correctly determined that Cendejas Rodriguez is not a member of a particular social group. Based on Cendejas Rodriguez's testimony that his family owned land in Mexico and the deeds that reflected that other members of his family owned the land in Mexico, the IJ and BIA concluded that Cendejas Rodriguez failed to establish that he owned substantial farmland, and the record does not compel a contrary conclusion.[2]

---

[2]In a footnote in his appellate brief, Cendejas Rodriguez asserts that, because the grounds for persecution can be actual or imputed under the law, whether Cendejas Rodriguez personally owned the land is irrelevant to determining whether he has shown he will more likely than not be persecuted if returned to Mexico based on his membership in a particular group. Because Cendejas Rodriguez never raised this claim before the BIA, we conclude that it is not exhausted, and we lack jurisdiction to address it. See Fernandez–Bernal v. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (providing that the exhaustion requirement is jurisdictional and precludes review of a claim that was not presented to the BIA).

16

The IJ and BIA also did not err in determining Cendejas Rodriguez's proposed family member group did not constitute a particular social group. As the BIA found, the defining attribute of Cendejas Rodriguez's proposed group is its persecution by the drug-trafficking organization, and the "risk of persecution alone does not create a particular social group." See Castillo-Arias, 446 F.3d at 1198.

But even if Cendejas Rodriguez was a member of a cognizable social group of either landowners or family members, the IJ and BIA correctly determined that Cendejas Rodriguez failed to show that the harm he feared at the hands of the Toledo family arose from his membership in either group. Instead, the record reflects that the members of his family were killed or kidnapped due to their failure to cooperate with the drug traffickers or were the victims of criminal activity. See Ruiz, 440 F.3d at 1258. Accordingly, substantial evidence supports the IJ's and BIA's decisions that Cendejas Rodriguez failed to establish a nexus between his membership in a particular social group and the harm he feared in Mexico.

For all of the foregoing reasons, we deny Cendejas Rodriguez's petition.

**PETITION DENIED.**

17