[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12543
Non-Argument Calendar
_____

Agency No. A099-261-024

HAODONG QIU,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 3, 2014)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Haodong Qiu, a native and citizen of China, appeals the final order of the

Board of Immigration Appeals (BIA), which affirmed the Immigration Judge's (IJ) denial of asylum, withholding of removal, and denial of protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).  Qiu challenges the finding that his asylum claim was untimely, and challenges the denial of his withholding-of-removal and CAT claims on the merits.  After careful consideration, we affirm.

## I.

Qiu first argues that the BIA and IJ wrongly concluded that his application for asylum was untimely filed.  We lack jurisdiction to review that decision.  We review de novo our subject matter jurisdiction.  Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007).  "[S]ection 1158(a)(3) divests our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  We retain jurisdiction only to review questions of law and constitutional claims arising from such a determination.  8 U.S.C. § 1252(a)(2)(B) & (D).  Because Qiu does not raise legal or constitutional claims as to the timeliness of his application, Qiu's appeal of that issue is dismissed.

## II.

Qui next argues that the BIA and IJ erred in failing to withhold his removal.

2

Because the BIA "adopted the IJ's reasoning and briefly articulated its reasons for doing so," we review both the BIA and IJ decisions. Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005). We review any legal determinations de novo and any factual determinations under the substantial evidence test. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254–55 (11th Cir. 2006) (per curiam). "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). To conclude that a finding of fact should be reversed, the record must "compel[] a reversal." Id. (emphasis added).

Under the INA, an alien shall not be removed to a country if his life or freedom would be threatened on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). We have held that to obtain such relief, an alien must show a clear probability of persecution by demonstrating that it is more likely than not that he will be persecuted upon returning to his country. Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1308 (11th Cir. 2013) (per curiam). An alien may satisfy his burden of proof by showing the existence of past persecution, which gives rise to a rebuttable presumption of future persecution. Id. Absent past persecution, an alien is entitled to withholding of removal if "he establishes that it is more likely than

not that he would face a future threat to his life or freedom upon removal due to a protected ground." Id.  This court has required that "[a]n alien . . . present 'specific, detailed facts showing a good reason to fear that he . . . will be <u>singled out</u> for persecution on account of [a protected ground].'" Id. at 1310 (alteration in original) (quoting <u>Najjar v. Ashcroft</u>, 257 F.3d 1262, 1287 (11th Cir. 2001)).

The record here does not compel the conclusion that Qiu will more likely than not face persecution in China because of a protected characteristic.  First, Qiu reported no problems when he previously lived in China; in fact, he testified that he held a technical job with "above average" salary.  The record supports the finding that there was no evidence of <u>past</u> persecution.

Second, absent past persecution, the record does not compel the conclusion that Qiu will more likely than not be singled out for future persecution.  Though Qiu is a Christian, his religious activities in the United States have been limited to attending church activities.  Qiu provided no evidence that he would be singled out from the 45,000,000 to 100,000,000 other Christians in China for persecution.  Qiu also provided no evidence for his claim that he was "black listed" in China because of his church attendance.  Although Qiu testified that, after he attended church during a visit to America in 1993, his group leader criticized him, confiscated his Bible, and forced him to sign a statement acknowledging guilt, this single incident nineteen years ago does not demonstrate that the Chinese government would seek

4

to persecute him today.   Indeed, Qiu presented no evidence that he faced any continuing consequences or that the Chinese government was still aware of his actions.  Finally, although Qiu testified that he believed the Chinese police had visited his family and asked about his whereabouts in 1993, this incident was isolated and temporally remote, and Qiu did not testify that police threatened him or his family—let alone that they asked about his religious activity.  The BIA and IJ therefore did not err in failing to withhold removal.

### III.

Finally, Qiu argues that the BIA and IJ erred by not providing him with CAT relief.  Under the CAT, an alien bears the burden of establishing that it is more likely than not that he would be tortured if removed.  8 C.F.R. § 208.16(c)(2).  The CAT defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

§ 208.18(a)(1).

Here, the record does not compel the conclusion that Qiu would more likely than not be tortured if removed.  Qiu presented no specific evidence of past torture,

5

nor did he testify about any specific threats related to future torture by the Chinese government.

Qiu's petition is **DISMISSED** in part and **DENIED** in part.