[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14782
Non-Argument Calendar
_____

Agency No. A200-952-758


JOAQUIN GARCIA GARCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 29, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Joaquin Garcia Garcia, through counsel, petitions for review of the Board of Immigration Appeals's ("BIA") dismissal of his appeal from the Immigration Judge's ("IJ") denial of his application for withholding of removal under the Immigration and Nationality Act ("INA"). On appeal, Garcia contends that he demonstrated statutory eligibility for withholding of removal based on his fear of future persecution because of his membership in a particular social group. After review, we deny Garcia's petition for review.

## I.  BACKGROUND

In 2004, Garcia, a native and citizen of Mexico, entered the United States without inspection. In 2012, the Department of Homeland Security issued Garcia a notice to appear charging him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled, and INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being present without valid entry documents. Garcia does not challenge his removability.

## A.    Application for Withholding of Removal

On August 22, 2013, Garcia filed an application for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).[1]  Garcia indicated that he sought

---

[1]Garcia also unsuccessfully filed applications for asylum and relief under the United Nations Convention Against Torture ("CAT"). In his brief to this Court, however, Garcia does not challenge the denial of asylum and CAT relief. Therefore, we do not address these claims.

withholding of removal because of his fear of future persecution based on his membership in a particular social group, but he did not identify the particular social group to which he allegedly belonged.  In his application and attached personal statement, Garcia stated that he feared returning to Mexico because of the country's high rates of violence, kidnappings, and corruption.

## B.    Evidence Before the IJ

At a hearing before the IJ, Garcia testified that he was afraid of being kidnapped, assaulted, robbed, or killed in Mexico because of his "perceived wealth" in returning from the United States.  Garcia claimed that there were "people," both in "farm areas" and "big cities," "constantly checking . . . who's coming in and out [of Mexico]" to identify targets for kidnapping or robbing.  Garcia believed that he would not be able to seek protection against such "people" from law enforcement because of government corruption.

Garcia further testified that he personally knew an individual, Rulen Vialouis, who was kidnapped in Mexico in 2004 or 2005 for money.  Garcia opined, based on information he received from family living in Mexico and news reports, that there had been a rise in gangs since he left Mexico.

---

See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009) (deeming abandoned petitioner's CAT claim to which petitioner's brief made only a "passing reference").

3

Garcia conceded, however, that neither he nor any member of his family had ever been harmed while living in Mexico. At the time of his application, Garcia's parents and two of his ten siblings still lived in Mexico. Garcia's parents remained in the same family home where Garcia grew up in his home city of Yuriria, Guanajuato. Garcia estimated that his home city was 50 percent safer than "other areas in Mexico." Garcia admitted that he originally came to the United States for work and not for protection and that there was nothing distinguishing him from any other person returning to Mexico from the United States.

Before the IJ, Garcia also submitted U.S. Department of State reports concerning country conditions in Mexico, including a 2012 travel warning, a 2012 Human Rights Report, and a 2013 Crime and Safety Report, as well as news articles reporting on law enforcement corruption.

Generally, the reports and articles stated that crime and violence, often in connection with drug-trafficking organizations, were widespread in Mexico but varied greatly by location. The 2012 travel warning noted that "[t]he number of kidnappings and disappearances throughout Mexico [was] of particular concern" and that members of both local and expatriate communities had been victims of kidnapping. Kidnapping remained a serious and underreported problem for persons of all socioeconomic levels, although the travel warning encouraged visitors to avoid displaying evidence of wealth.

4

The reports and articles further indicated that corruption, human rights abuses, and participation in criminal activity were rampant among police forces. Police at both the state and local level sometimes provided protection for, or acted directly on behalf of, organized crime and drug traffickers.

## C.    IJ's Decision

On January 14, 2014, the IJ denied Garcia's application for withholding of removal. The IJ found that Garcia's general concern with escalating violence in Mexico did not establish past persecution or a probability of future persecution based on a protected ground.

The IJ granted Garcia's request for voluntary departure, stated that the voluntary departure order was valid for 60 days, and set a minimum bond of $500 with an alternative order of removal to Mexico.

## D.    Appeal to the BIA

Garcia appealed to the BIA, arguing that he satisfied the burden for withholding of removal by showing that he would more likely than not be the victim of violence at the hands of "criminal elements" if returned to Mexico. Garcia suggested that he belonged to a particular social group—"Mexican citizen[s] who had been living in the United States"—and contended that this group was the target of escalating violence in Mexico.

On September 22, 2014, the BIA dismissed Garcia's appeal. As to Garcia's withholding of removal claim, the BIA concluded that Garcia failed to show a nexus between a likelihood of future persecution and a protected ground under the INA. The BIA reasoned that while Garcia "fear[ed] crimes perpetrated by unknown persons," this Court "has held that evidence consistent with private violence . . . does not constitute evidence of persecution upon a statutorily protected ground." The BIA rejected Garcia's attempt to fit his "circumstances into [a] particular social group category," noting that "ordinary crime does not constitute a basis for persecution."[2]

## II. DISCUSSION

To qualify for withholding of removal under the INA, an applicant must show that, if returned to his country, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). Where, as here, the

---

[2]Although the BIA dismissed Garcia's appeal, it issued a limited remand to the IJ to provide the requisite advisements for voluntary departure because it was unclear from the record whether the IJ had adequately provided Garcia these advisements. Despite the limited remand, the BIA's order constitutes a final order of removal, such that we have jurisdiction over Garcia's petition for review. See Del Pilar v. U.S. Att'y Gen., 326 F.3d 1154, 1156-57 (11th Cir. 2003). In addition, to the extent that the government contends that we should dismiss Garcia's petition for review for prudential reasons, we DENY the government's motion to dismiss. That motion raises certain issues that this Court has not yet expressly decided, and we need not decide these issues here because Garcia's petition for review is meritless in any event.

6

applicant fails to show past persecution, he must demonstrate that it is more likely than not that he will be persecuted on account of a protected ground if removed to his country.  See Tan, 446 F.3d at 1375.[3]

The applicant must present specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of a protected ground, and he must establish a nexus between the persecution he fears and the protected ground.  See Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310 (11th Cir. 2013); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004).  We will not reverse a finding that an applicant failed to demonstrate a nexus between the alleged persecution and a protected ground unless the evidence compels a conclusion that the applicant has been or will be persecuted "because of" the protected ground.  Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007).

Here, the BIA concluded that Garcia failed to demonstrate a nexus because his fear of "ordinary crime" or "private violence" by "unknown persons" did not amount to evidence of persecution based on a statutorily protected ground.  We cannot say that the record compels a different conclusion.  Garcia's evidence established at most that crime, including kidnapping for ransom, is widespread in

---

[3]We review only the decision of the BIA where the BIA did not expressly adopt the IJ's decision.  Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009).  We review conclusions of law de novo and factual determinations under the substantial-evidence test.  Id.

Mexico and that people within both the expatriate and local communities, and at all socioeconomic levels, may be targeted by gangs and drug-trafficking organizations for kidnapping.  As a matter of law, such evidence of high levels of general criminal activity within a country alone is insufficient to "constitute evidence of persecution based on a statutorily protected ground."  See Ruiz v. U.S. Atty. Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) (holding that "evidence that . . . is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground"); Rodriguez, 735 F.3d at 1310-11 (explaining that the petitioner "failed to establish a nexus between his membership in a particular social group and the harm he feared in Mexico" where the "record reflect[ed] [only] that the members of his family were killed or kidnapped due to their failure to cooperate with the drug traffickers or were the victims of criminal activity").

Accordingly, we deny Garcia's petition for review.

**PETITION DENIED.**

8