[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14744
Non-Argument Calendar
_____

Agency No. A087-722-402


XINHUA SONG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 2, 2015)

Before HULL, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Xinhua Song, a native and citizen of China, seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his application for withholding of removal under the Immigration and Nationality Act ("INA") § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).  After a thorough review of the record, we deny the petition.

## I.  BACKGROUND FACTS

### A.    Notice of Removal and Asylum Application

On October 3, 2004, Song entered the United States as a non-immigrant business visitor with authorization to remain in the country until October 17, 2004. Five years later, in October 2009, Song filed an application for asylum, withholding of removal, and CAT relief alleging both past persecution and a well-founded fear of future persecution based on his political opinion.  In his asylum statement, Song said that he left China to escape persecution due to his efforts to fight corruption by officials at the Cangzhou Martial Arts School in Hebei Province, where he had been a teacher.  In November 2009, the former Immigration and Naturalization Service issued a notice to appear, charging Song as removable pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having

2

remained in the United States for longer than permitted.  Song conceded his removability.

## B.    Persecution Claims

According to Song's hearing testimony, officials at the martial arts school and at the Cangzhou Education Department had used the school's funds for their own personal benefit.  Song and his fellow teachers filed formal grievances with the school, the Education Department, and the municipal government, but their complaints garnered no response.  As a result, in July 2004, Song organized a teachers' strike and conducted a demonstration in front of a city government building.

The day after the strike, two police officers came to Song's home and took him to the local police station.  Song later learned that the officers had also arrested two other teachers who helped organize the strike.  The officers accused Song of engaging in anti-government activities and violating "the social principal."  After a two-day detention, Song's family posted bail, and he was released.  Song was required to report to the police station weekly while his case remained pending. Fearing further detention, Song's family arranged a visa for him to leave the country.  In September 2004, Song traveled to the United States via Canada.

3

Song further testified that he waited until July 2009 to submit his asylum application[1] because he initially thought that he would return to his wife and daughter in China.  In 2009, however, he learned from his family that the other two strike organizers had been sentenced to five-year prison terms.  Song's family also told him that the police had visited his home in China and advised that Song faced arrest and a "double sentence" if he returned to China, because he had "escaped."

As supporting evidence, Song submitted a 2012 Country Report for China, describing that repression and coercion against individuals involved in rights advocacy and public interest issues were commonplace.  The report further noted that conditions in penal institutions for political prisoners "were generally harsh and often degrading," with forced labor remaining "a serious problem."

## C.    IJ's Decision

The IJ denied Song's application for asylum, withholding of removal, and CAT relief, and ordered Song removed to China.  The IJ concluded that Song's application for asylum was untimely and discredited his explanation for the delay, namely his learning that his colleagues had been sentenced.  As such, the IJ concluded that Song had failed to establish changed circumstances to excuse his late filing.

---

[1]In June 2013, before his merits hearing, Song filed a second asylum application, which was substantively identical to his original asylum application.

The IJ also found that Song had failed to show his eligibility for withholding of removal because his actions in striking constituted a labor dispute that did not implicate a protected ground.  The IJ further found that the "lack of any corroborating documentation simply [was] fatal to [Song's] case."  Although the IJ did not discredit Song's hearing testimony in its entirety, the IJ found that Song's testimony that "he would somehow be apprehended immediately and sentenced [was] disingenuous at best."  The IJ further determined that Song did not meet the criteria for CAT relief because there was no evidence to show that the Chinese government or anyone acting on behalf of the government would persecute or torture Song.

**D.    BIA Appeal**

Song filed a notice of appeal to the BIA, arguing that based on the testimony and documentary evidence in the record he had met his burden to show eligibility for asylum, withholding of removal, and CAT relief.

The BIA dismissed Song's appeal.  The BIA found no clear error in the IJ's credibility finding as to Song's delay in filing his asylum application.  Thus, the BIA concluded that Song had failed to show a changed circumstance excusing his delay and that his asylum application was time-barred.

The BIA also concluded that Song failed to show that he had suffered past persecution, and thus, was not entitled to a presumption of future persecution.  The

BIA noted that, although Song was held at the police station for two days, there was no indication that he suffered any physical harm during his detention. Citing this Court's opinions in Kazemzadeh v. U.S. Attorney General, 577 F.3d 1341 (11th Cir. 2009), and Sepulveda v. U.S. Attorney General, 401 F.3d 1226 (11th Cir. 2005), the BIA concluded that the two-day detention, fine, and weekly reporting requirement did not rise to the level of persecution. Again citing Sepulveda, the BIA concluded that Song also had failed to demonstrate that he had a well-founded fear of future persecution.

Finally, the BIA determined that Song was not eligible for CAT relief because he failed to show that it was more likely than not that he would be tortured by or with the acquiescence of the Chinese government. Song filed a timely petition for review in this Court.[2]

## II.  GENERAL PRINCIPLES

As an initial matter, because the BIA neither expressly adopted the IJ's decision nor relied upon the IJ's reasoning in denying withholding of removal, we review only the BIA's order with respect to that issue. See Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1153 (11th Cir. 2014). We review the BIA's legal determinations

---

[2]Song's petition for review does not challenge the determination that his asylum application was time-barred, and in any event, we would lack jurisdiction to review it. See Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231 (11th Cir. 2007) (highlighting that INA § 208(a)(3), 8 U.S.C. § 1158(a)(3) "eliminates appellate jurisdiction to review the Attorney General's determination whether an alien filed within one year or established extraordinary circumstances to excuse an untimely [asylum] filing"). Accordingly, we do not address Song's asylum application further.

de novo, and its factual determinations under the substantial-evidence test. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). "[W]e must affirm the [BIA's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1254-55 (quotation marks omitted). "[W]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. at 1255 (quotation marks omitted). In order to conclude that a finding of fact should be reversed, we must determine that the record compels reversal. Id.

To qualify for withholding of removal, an alien "must show that [his] life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437 (11th Cir. 2004) (quotation marks omitted). "The applicant must demonstrate that he would 'more likely than not' be persecuted upon being returned to his country of origin." Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1308 (11th Cir. 2013).

An applicant for withholding of removal may satisfy his burden of proof in two ways. First, the applicant may establish past persecution based on a protected ground. Sanchez, 392 F.3d at 437. A showing of past persecution creates a rebuttable presumption that the applicant's life or freedom would be threatened upon return to his country. Id. Second, the applicant may establish that it is more

likely than not that he would face a future threat to his life or freedom upon removal based on a protected ground. Id. An alien seeking withholding of removal based on a future threat "must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of a protected ground." Rodriguez, 735 F.3d at 1310 (quotation marks and alteration omitted). Furthermore, this "more likely than not" standard requires the applicant to show a "clear probability of persecution," which is a higher standard than the "well-founded fear" standard used for asylum claims. Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007).[3]

This Court has "held that persecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation . . . mere harassment is not persecution." Rodriguez, 735 F.3d at 1308 (quotation marks omitted). Moreover, "[m]inor physical abuse and brief detentions do not amount to persecution." Kazemzadeh, 577 F.3d at 1353 (concluding a four-day detention and five hours of interrogation and beating, after which the petitioner was monitored by government authorities and summoned to appear before a university disciplinary committee, did not compel a finding of persecution); Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (concluding that a 36-hour

---

[3]To show a well-founded fear, an asylum applicant need only show a "reasonable possibility" of persecution. See 8 C.F.R. § 208.13(b)(2)(i)(B). Given that the "clear probability" standard for withholding of removal is more stringent, to the extent the BIA's decision stated that Song failed to demonstrate a well-founded fear, any error was harmless.

8

detention during which the petitioner was beaten with a belt and kicked and then warned by a group loyal to the president that he might be detained again did not compel a finding of persecution); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (concluding a five-day detention during which the petitioner was forced to watch reeducation videos, stand in the sun for two hours, and sign a pledge not to practice his religion did not compel a finding of persecution).

As for CAT relief, an applicant subject to removal establishes eligibility if he shows that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2).  To constitute torture, the individual subject to removal must be subjected to severe physical or mental pain or suffering.  Id. § 208.18(a)(1).  The torture must be committed by the government or with the acquiescence of the government.  Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1145 (11th Cir. 2010).

### III.  SONG'S CLAIMS

Here, substantial evidence supports the BIA's determination that Song failed to demonstrate eligibility for withholding of removal or CAT relief.  First, the record does not compel the conclusion that Song suffered past harm rising to the level of persecution because he was only briefly detained, not physically threatened or harmed, and released on bail with limited conditions—reporting weekly to the security bureau and attending his trial.  This treatment does not rise

9

to the level of persecution.  See, e.g., Kazemzadeh, 577 F.3d at 1353; Djonda, 514 F.3d at 1171, 1174; Zheng, 451 F.3d at 1290-91.[4]

Because Song did not establish past persecution, the BIA did not err in failing to afford him a presumption of future persecution.  See Sanchez, 392 F.3d at 437.  Moreover, there is nothing in the record to suggest that it is more likely than not that Song would be subject to persecution if returned to China.  Indeed, Song's past treatment by the police suggests at most that he would be subjected to harassment, which is not sufficient to establish persecution.  See Rodriguez, 735 F.3d at 1308.

Song asserted that he learned from his family that his co-organizers in the teachers' strike were sentenced to prison terms for their activities; however, he did not explain the nature of the charges or sentences or offer proof to corroborate his claim.  Additionally, Song provided no evidence, beyond his own statements, to demonstrate that the police continued to visit his family or intended to apprehend him.  In fact, as both the IJ and the BIA noted, Song did not obtain any documents or letters from his family or others supporting his claim about his family in China.  Notably, Song's alleged activities did not prevent him from obtaining necessary travel documents to leave China in 2004 or from renewing his Chinese passport in

---

[4]While Kazemzadeh, Djonda and Zheng involved petitioners seeking asylum for past persecution, where a petitioner is unable to meet his burden to prove his eligibility for asylum, he necessarily cannot satisfy the more stringent standard required for withholding of removal.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001).

2009.  Further, Song identifies no evidence, aside from general statements in the Country Report related to conditions of detention, to establish that any sentence or detention for his purported political activities would rise to the level of persecution. Under the circumstances, we cannot say the record compels a conclusion that there is a "clear probability" that Song will be singled out for persecution if he is returned to China.

Finally, substantial evidence supports the BIA's determination that Song was not entitled to CAT relief.  Song presented no specific evidence of past torture, nor did he testify about any specific threats or fears related to future torture by the Chinese government.

For all these reasons, we deny Song's petition for review of the denial of his claims for withholding of removal and CAT relief.

**PETITION DENIED.**