[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13840
Non-Argument Calendar

_____

Agency No. A205-128-846

ABEL SANTIAGO-JIMENEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 6, 2016)

Before WILLIAM PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Abel Santiago-Jimenez petitions for review of a Board of Immigration

Appeals (BIA) order denying his application for withholding of removal. The BIA

ruled that Santiago-Jimenez was not eligible for withholding of removal because

his fear of being harmed by gangs in Mexico was not based on his "race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  Santiago-Jimenez argued that these gangs would target him on the basis of his being a hard-working person and a freshly returned expatriate.  Because Santiago-Jimenez has not proved that either of these characteristics count as "membership in a particular social group," we deny his petition.

I.

Santiago-Jimenez is a citizen of Mexico.  On August 14, 2012, the Department of Homeland Security charged that Santiago-Jimenez entered the United States without inspection in 2006.  Santiago-Jimenez conceded he was removable for that reason but applied for withholding of removal, as well as for relief based on the United Nations Convention Against Torture (CAT).   His application alleged that gang members in Mexico had threatened to kill him if he did not join them.

At a hearing before an immigration judge, Santiago-Jimenez elaborated on the extreme violence carried out by these gangs.  He explained that he came to the United States to "run[] away" from the gangs.  He admitted that no gang members ever threatened him or his family directly, though gangs targeted his neighbors. The gangs "couldn't stand it" that his neighbors were working people, so gang

2

members "would come to their home at night and rob them," killing "whoever put up resistance." Santiago-Jimenez named two neighbors who were killed this way. He also testified that the gangs targeted people who returned to Mexico from the United States because the gangs thought they had money.

The immigration judge denied Santiago-Jimenez's application. She concluded that Santiago-Jimenez's fear, while "certainly understandable," was based on "the general violence and strife in his country." She explained that this was not a fear based on that Santiago-Jimenez's race, religion, nationality, membership in a particular social group, or political opinion. She also found that Santiago-Jimenez was not entitled to CAT relief because he "did not testify that he feared the government of Mexico" and because he presented no evidence to establish that the government would target him for torture.

The BIA affirmed that decision. The BIA ruled that Santiago-Jimenez had not shown that either hard-working people or people returning from the United States were "a cognizable particular social group within Mexican society." The BIA also ruled that Santiago-Jimenez's argument that the gangs specifically targeted these groups was not supported by evidence showing that this was the "motivation of the gang members." Instead, the BIA said, the "gangs have directed harm against anyone and everyone in furtherance of their criminal enterprises conducted for their own pecuniary gain." The BIA ordered Santiago-

3

Jimenez removed from the United States.

## II.

The Immigration and Nationality Act (INA) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Congress has not defined what constitutes a "particular social group." But this Court has said that the term "refers to persons who share a common, immutable characteristic 'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" Rodriguez v. U.S. Atty. Gen., 735 F.3d 1302, 1310 (11th Cir. 2013) (per curiam) (quoting Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196 (11th Cir. 2006)). To meet the statute's definition, a group also needs "social visibility," meaning the group's characteristics must be "highly visible and recognizable by others in the country." Castillo-Arias, 446 F.3d at 1194 (quotation omitted). Beyond that, a group can't be "too numerous or inchoate," and it shouldn't be defined so broadly that it is "a catch-all for all groups who might claim persecution." Id. at 1197–98.

Castillo-Arias upheld the BIA's determination that a group defined as "noncriminal informants" working against a drug cartel in Colombia was not

4

"particular" enough, in part because there was "no evidence that the cartel would treat [these informants] any differently from any other person the cartel perceived to have interfered with its activities." Id. at 1198.  Also, "virtually the entire population of Colombia is a potential subject of persecution by the cartel," and "risk of persecution alone does not create a particular social group within the meaning of the INA." Id.  Similarly, Rodriguez upheld the BIA's determination that "members of a family targeted by a drug-trafficking organization" were not a particular enough social group because "the defining attribute of" this group "is its persecution" by criminals.  735 F.3d at 1310.

### III.

When the BIA decides that someone is statutorily ineligible for withholding of removal, we review that decision under the "substantial evidence test." Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011).  For findings of fact, this test requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. (quotation omitted).  For legal questions (such as whether a particular group is covered by the language of the INA), our review is de novo.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).

Substantial evidence supports the BIA's decision here.  First, the record does not establish that criminal gangs in Mexico specifically target either hard-working

5

people or expatriates returning from the United States.  The documentary evidence in the record instead shows that the gangs choose their victims based on wealth and vulnerability, and that gang violence is motivated primarily by a desire to maintain power and impunity.  Second, Santiago-Jimenez presented no evidence that either people returning from the United States or hard-working people who are making economic progress are distinct enough to be "highly visible and recognizable by others" in Mexican society.  Castillo-Arias, 446 F.3d at 1194.  Also, the latter group is defined with characteristics that are neither "immutable" nor "fundamental to its members' individual identities or consciences."  Id. at 1196 (quotation omitted).

**PETITION DENIED.**