[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15697
Non-Argument Calendar
_____

Agency No. A088-012-496

RICHARD LLOYD STEWART,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.
_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 3, 2018)

Before TJOFLAT, JORDAN, and HULL, Circuit Judges.

PER CURIAM:

Richard Lloyd Stewart petitions for review of the Board of Immigration Appeals' affirmance of an Immigration Judge's denial of his application for withholding of removal under § 241(b)(3) of the Immigration Nationality Act, 8 U.S.C. §1231(b)(3), and withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). After review, we deny Mr. Stewart's petition.

## I

Mr. Stewart, a native and citizen of Jamaica, entered the United States on or about March 31, 1993, on a non-immigrant B-2 visa with authorization to remain in the United States not longer than six months. He remained in the United States, however, and on April 29, 2014, was convicted in the United States District Court for the Middle District of Florida of the offense of making a false claim of United States citizenship, in violation of 18 U.S.C § 911, and sentenced to time served. On May 2, 2014, the Department of Homeland Security initiated removal proceedings against Mr. Stewart through the issuance of a Notice to Appear. Mr. Stewart then applied for withholding of removal and CAT protection.

At his merits hearing on May 17, 2016, Mr. Stewart testified that he is afraid of returning to Jamaica because of his sexual orientation. Mr. Stewart identifies himself as bisexual. He is currently married and has five children with different

2

mothers. Mr. Stewart stated that while attending boarding school in Jamaica he suffered verbal and physical abuse by his classmates because they perceived him as gay. He specified one incident in which he was beaten and tied up to a bed by his roommates because of his sexual orientation.

The IJ, however, found Mr. Stewart not credible and determined that the past harm in Mr. Stewart's case did not rise to the level of persecution. The IJ also concluded that Mr. Stewart failed to prove that he more likely than not will suffer future harm or persecution in Jamaica. Lastly, the IJ determined that Mr. Stewart was not likely to suffer torture if returned to Jamaica. Therefore, the IJ denied Mr. Stewart's claims for relief. Mr. Stewart appealed the IJ's order to the BIA, which affirmed without addressing Mr. Stewart's credibility. Mr. Stewart now seeks our review of these decisions.[1]

**II**

"We review the decision of the Board, and we review the decision of the Immigration Judge to the extent that the Board expressly adopted the opinion of the Immigration Judge." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009) (citations omitted). We review conclusions of law *de novo*, and factual findings for substantial evidence to support them. *See id.* "Under the substantial evidence standard, we view the record evidence in the light most

---

[1] Mr. Stewart conceded that he was not eligible for asylum due to his untimely filing of this application.

favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (citations omitted). We will affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Kazemzadeh*, 577 F.3d at 1351 (citations omitted).

## III

### A

An applicant seeking withholding of removal must establish that his life or freedom would be threatened in his home country because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The applicant may satisfy this burden by establishing that he suffered persecution in the past based on the protected ground, or that it is more likely than not that he will be persecuted on account of a protected ground if returned to his home country. *See Rodriguez*, 735 F.3d at 1308. *See also* 8 C.F.R. § 1208.16(b). A finding of past persecution creates a rebuttable presumption that the applicant's life or freedom would be threatened upon return to his country. *See Rodriguez*, 735 F.3d at 1308. In such cases, the DHS bears the burden of proving by a preponderance of the evidence that there has been a fundamental change in circumstances of the applicant, or there is a possibility of safe relocation to another

4

part of the applicant's native country, such that the applicant's life or freedom would not be threatened. *See* 8 C.F.R § 1208.16(b)(1)(i)-(ii).

A particular social group "refers to persons who share a common, immutable characteristic 'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Rodriguez*, 735 F.3d at 1310. Here, the IJ and the BIA agreed that Mr. Stewart established his membership of a cognizable particular social group based on his sexual orientation.

**B**

Persecution is "an extreme concept that . . . requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235 (11th Cir. 2013) (citations omitted). Cases of political persecution in which petitioners suffered minor physical abuse combined with harassment have been held to *not* rise to the level of persecution. *See Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (petitioner held in prison for thirty-six hours and beaten, suffering scratches and bruises, but not bone fractures); *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000) (fear of re-education and indoctrination in communist theory and of being used for propaganda purpose not enough to constitute persecution).

5

Mr. Stewart testified that while in boarding school in Jamaica his classmates targeted him on a constant basis and would tie him to a bed and beat him. Mr. Stewart failed, however, to provide any details of the beatings and failed to provide any other type of evidence to support his claims. He did not provide any evidence of the severity, extent, or frequency of the beatings, nor of any injuries that he may have suffered.

Thus, the BIA did not err in concluding that Mr. Stewart failed to prove past persecution by a preponderance of the evidence. To the contrary, substantial record evidence supports the BIA's conclusion.

## C

"An alien who cannot show past persecution can still qualify for withholding of removal by showing that it is 'more likely than not' that he will be persecuted on account of a protected ground." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007) (citations omitted). *See also* 8 C.F.R. §1208.16(b)(2). An individual is not required to show that he would be singled out for persecution if he establishes that there is a pattern or practice in his home country of persecution of a group of persons, similarly situated to him, of which he is included, and that it is more likely than not that his life or freedom would be threatened if he returned to that country. *See id.*

6

Here, the BIA accepted Mr. Stewart's inclusion in and identification with the LGBTI community, but it determined that he failed to show that Jamaica has a current pattern or practice of persecution for LGBTI individuals, such that his life or freedom would more likely than not be threatened. The BIA relied on recent evidence showing improvements in the conditions for and treatment of the LGBTI community in Jamaica. For instance, the Jamaica 2015 Human Rights Report noted that Jamaica has not enforced its "anti-buggery" law against two same-sex consenting adults, but only in cases of sexual assault or child molestation. *See* AR at 285. Further, it noted that the Jamaican Ministry of Health and the NGO J-FLAG trained more than 200 healthcare workers to sensitize them to LGBTI patients. *See id.* Thus, substantial evidence supports the BIA's conclusion that Mr. Stewart failed to prove that he was more likely than not to suffer future threats to his life and liberty if returned to Jamaica.

## IV

The BIA also denied Mr. Stewart's application for withholding of removal under the CAT. Mr. Stewart bore the burden of proving by a preponderance of the evidence that he would more likely than not be tortured if returned to Jamaica. *See* 8 C.F.R. §1208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the

7

consent or acquiescence of a public official or other person acting in an official capacity." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir. 2013) (quoting 8 C.F.R. § 208.18(a)(1)).

Here, Mr. Stewart failed to prove both that he suffer severe pain or suffering and that such pain or suffering would be inflicted, instigated, or acquiesced to by a public official. *See id.* There is substantial record evidence to show that the Jamaica government does not inflict, instigate or acquiesce in the suffering or pain of the LGBTI Jamaicans. To the contrary, the Jamaica 2015 Human Rights Report shows that the government, with the help of NGOs, is working on improving the conditions for LGBTI Jamaicans. *See* AR at 285.

## V

Because there is reasonable, substantial, and probative record evidence to support the BIA's decision, we deny Mr. Stewart's petition.

**PETITION DENIED.**

8