[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16077
Non-Argument Calendar
_____

Agency No. A206-261-095


JUNIOR ALFREDO MEDINA ACOSTA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 23, 2017)

Before MARTIN, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Junior Alfredo Medina Acosta petitions for review of the Board of Immigration Appeals ("BIA") final order affirming the denial by the Immigration Judge ("IJ") of his application for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. We deny the petition in part and dismiss in part.

## I. BACKGROUND

Acosta, a native and citizen of Honduras, entered the United States without inspection in January 2014. Border patrol agents encountered Acosta soon after his entry and he expressed no fear of return. In a later credible-fear interview, however, Acosta informed immigration officials that he feared returning to Honduras due to threats from a man named Jose Antonio Sarmiento, who blamed Acosta's father for the death of his nephew and who had killed Acosta's grandfather, had his cousin killed, and had shot at Acosta. He claimed Sarmiento was connected to a man named Lucio Rivera, who was related to a Honduran legislative representative.

In February 2014, Acosta was issued a Notice to Appear by the Department of Homeland Security ("DHS"), stating he was removable under the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(1), 8 U.S.C. § 1182(a)(7)(A)(i)(1), for being an alien who at the time of admission did not possess a valid entry document. Acosta conceded removability as charged. In November 2014, Acosta filed an application for asylum, withholding of removal, and CAT relief, based on

2

membership in a particular social group.[1]  He stated he and his family had been targeted by members of the Sarmiento family, because they wanted ownership and control of Acosta's uncle's land.  He also submitted evidence regarding multiple attacks on his family members.

At the merits hearing, Acosta testified he came to the United States, because he was afraid of being murdered by Sarmiento.  In 2002, Sarmiento began harming his family, because of a dispute over land purchased by Acosta's uncle in 2001.  Sarmiento had wanted to purchase the land but Acosta's uncle had purchased it instead.  Acosta testified Sarmiento wanted "to get even" and Sarmiento had tried to kill his uncle but had not succeeded.  R. at 151.  Sarmiento wanted to kill Acosta and his father due to their familial relationship with his uncle.

Acosta testified that, in 2002, Sarmiento shot at his uncle and aunt.  They reported the crime but the police did not arrest Sarmiento.  Sarmiento moved to the United Sates; upon his return in 2008, he shot and killed Acosta's grandfather.  Acosta's family reported the crime but there was no investigation.  Acosta believed Sarmiento was "involved with" the police, because he had a friend who worked with the police.  R. at 157.  Later in 2008, Sarmiento shot at Acosta but missed.  Afraid of making things worse, Acosta did not report it to the police.  He dropped out of school and could not go out, because he was afraid of being killed.

---

[1] He also alleged persecution based on political opinion, but that ground is not at issue on appeal.

3

In 2010, Acosta's father was shot at but was not wounded; his father did not see who fired the shot but Acosta testified his father did not have problems with anyone other than Sarmiento. Later that year, Sarmiento and others, dressed as military, shot and wounded Acosta's uncle and cousin. In 2011, Sarmiento hired an assassin to kill a younger male cousin of Acosta. In 2013, Sarmiento was arrested and went to trial for the deaths of Acosta's grandfather and cousin; he was found not guilty.

The IJ asked Acosta about his credible-fear interview, in which Acosta said Sarmiento wanted to harm him because he blamed Acosta's father for killing Sarmiento's nephew. Acosta denied saying this, but he later conceded that he might have said that and admitted his father had been accused in the death of Sarmiento's nephew. Acosta testified he did not mention the land dispute during his credible-fear interview because he was nervous. Acosta also admitted he moved to his aunt's house in the capital for three months and he was not harmed during this time, but Acosta stated it was because he did not leave her house.

The IJ denied Acosta's claims for asylum, withholding of removal, and CAT relief. While the IJ found Acosta was not credible based on the differing reasons he gave for Sarmiento's attacks, the IJ assumed the reason for the attacks was the land dispute, because Acosta had provided corroborating evidence. The IJ found Acosta had shown he was a member of a "particular social group defined as male

4

relatives of his family from the root of his grandfather on the paternal side on down." R. at 70. The IJ found, however, that Acosta and his family had been targeted by criminals in pursuit of their criminal activity and this did not suffice to show persecution on account of a protected ground. Acosta's family was involved in an interfamily dispute and private violence of this type had been held not to be on account of a particular social group. Although Acosta had established past harm, he failed to show past persecution, because there was no nexus with a protected ground.

The IJ also determined Acosta failed to meet his burden to show he could not safely relocate within Honduras. Acosta spent three months in the capital without being harmed and Sarmiento had not harmed any members of Acosta's family within the past two years. The IJ did not accept Acosta's contention that his family members were virtually prisoners in their own homes and noted they were farming and raising cattle to some extent. The IJ found Acosta did not establish he could not relocate reasonably within Honduras away from the villages where the harm took place and that he would be harmed if he moved elsewhere. Acosta's claim that Rivera had government connections and would find him if he relocated was speculative and unsubstantiated. The IJ further found, because the police arrested Sarmiento and he stood trial, the government did not turn a blind eye to the harm nor was it unwilling to protect Acosta.

5

The IJ concluded Acosta failed to show past persecution or a well-founded fear of persecution based on one of the protected grounds and thus did not meet his burden for asylum.  Acosta therefore could not meet the higher burden of eligibility for withholding of removal.  As to Acosta's CAT claim, the IJ noted Acosta gave no specific testimony as to this claim and found there was no evidence indicating the government of Honduras would either torture Acosta directly or acquiesce to his torture.  The IJ therefore concluded Acosta had not met his burden for CAT relief.

Acosta appealed to the BIA and argued the IJ erred in denying his asylum application.  Acosta made no argument concerning the denial of his application for CAT protection.  The BIA affirmed the IJ's decision.  In concluding that Acosta had not established eligibility for asylum, the BIA did not address Acosta's credibility and assumed he was credible.  It agreed with the IJ that Acosta did not demonstrate past persecution on account of a protected ground, because he did not show the harm he suffered was on account of his membership in a particular social group.  Even though Acosta's proposed social group might qualify as a particular social group under the INA, the BIA agreed the record did not establish the harm Acosta feared was or would be on account of his membership in that group.  The harm, which arose from a land dispute and Sarmiento's purported desire to retaliate for the death of a relative, was the result of criminal activity.  Although there might

be scenarios in which a family owning land could be victims of persecution as a family, in this case, Acosta had not shown Sarmiento had singled out his family or continued to pursue them in order to make an example of them in the town.

Because Acosta did not show past persecution, he had the burden to show he could not reasonably relocate. The BIA agreed with the IJ's conclusion that Acosta failed to meet his burden, because no male family member had been harmed for at least two years and Acosta's speculation that Rivera may have government connections was insufficient to establish the possibility of future harm was country-wide. The BIA also concluded Acosta failed to show the Honduran authorities were unable or unwilling to protect him and his family.

Because Acosta was unable to demonstrate eligibility for asylum, he was precluded from qualifying for withholding of removal, which required a higher burden of proof. The BIA noted Acosta had not meaningfully challenged the IJ's denial of his CAT claim but agreed with the IJ that Acosta had not shown it was more likely than not he would be tortured by or with the acquiescence of the government if returned to Honduras. The BIA dismissed Acosta's appeal.

## II. DISCUSSION

**A. Claim for Asylum and Withholding of Removal**

On petition for review, Acosta argues the IJ and BIA improperly concluded he failed to show his membership in a particular social group was a central reason

7

for past or future persecution.  He also argues the IJ and BIA erred in finding he could safely and reasonably relocate within Honduras and in concluding he failed to show the Honduran government was unable or unwilling to protect him.

We review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision.  *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  Where the BIA agrees with the IJ's reasoning, we also will review the IJ's decision to that extent.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  Because the BIA issued its own opinion in this case, we will review the BIA's opinion.  *Najjar*, 257 F.3d at 1284.  Further, because the BIA explicitly agreed with several findings of the IJ, we may review the decisions of the both the BIA and the IJ as to those issues.  *Ayala*, 605 F.3d at 948.

We review legal determinations by the BIA de novo.  *Id.*  Factual determinations are reviewed under the substantial-evidence test, requiring us to affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id*. (quoting *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006)).  We view the evidence in the light most favorable to the BIA's decision and draw all reasonable inferences in favor of that decision.  *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).  We only will reverse when the record compels it.  *Id*.

The Attorney General or Secretary of DHS has discretion to grant asylum if an alien meets the definition of a "refugee" in the INA.  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *Najjar*, 257 F.3d at 1284.  To establish eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution.  8 C.F.R. § 208.13(b)(1), (2).

"To establish asylum based on past persecution, the applicant must prove (1) that []he was persecuted, and (2) that the persecution was on account of a protected ground." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008). If an applicant fails to demonstrate past persecution, he may still establish asylum based on a well-founded fear of future persecution.  8 C.F.R. § 208.13(b)(2); *De Santamaria*, 525 F.3d at 1007.  The applicant may prove eligibility by

9

demonstrating (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground. The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution. The objective prong can be fulfilled by establishing that the applicant has a good reason to fear future persecution.

*De Santamaria*, 525 F.3d at 1007 (citations and internal quotation marks omitted).

"An applicant does not have a well-founded fear of prosecution if [he] could avoid persecution by relocating to another part of [his] country of nationality . . . if under all the circumstances it would be reasonable to expect [him] to do so." 8 C.F.R. § 208.13(b)(2)(ii). Where an applicant has not established past persecution, he bears the burden of showing it would be unreasonable for him to relocate, unless the persecution is by a government or is government-sponsored. *Id.* § 208.13(b)(3)(i).

To establish persecution on account of a protected ground, an applicant must show race, religion, nationality, political opinion, or membership in a particular social group "was or will be at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). "[E]vidence that . . . is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Rodriguez*, 735 F.3d at 1310 (first alteration in original) (quoting *Ruiz v. U.S. Att'y Gen.*, 440 F.3d. 1247, 1258 (11th Cir. 2006)). To be entitled to withholding of removal, an alien must establish that his life or freedom would be threatened on account of his race, religion,

10

nationality, political opinion, or membership in a particular social group, which means that it is "more likely than not" he will be persecuted or tortured on account of a protected ground upon being returned to his country. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007). "Where an applicant fails to meet the burden for asylum, he necessarily cannot meet the more stringent burden for withholding of removal." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249 n.3 (11th Cir. 2006).

Acosta testified Sarmiento wanted to harm him and members of his family, because his uncle had purchased land Sarmiento wanted and Sarmiento wanted "to get even." R. at 149-51. Evidence attached to Acosta's asylum application also described how his uncle and cousin were shot at, because of "personal enmity over some lands" and "a personal feud." R. at 282-85, 312. Acosta also testified his father had been accused in the death of Sarmiento's nephew. Substantial evidence therefore supports the determination that this is a personal feud and Sarmiento's actions constitute acts of private violence and criminal activity. *See Rodriguez*, 735 F.3d at 1310.

The fact that the targets of this private dispute happen to be members of a family that could qualify as a particular social group does not compel the conclusion that the resulting harm is on account of such membership; nothing in the record shows Sarmiento was motivated by any animus toward the Acosta

11

family independent of his personal feud with them over the land or over his nephew's death. Acosta did not deny that if his uncle sold Sarmiento the land, it might stop Sarmiento from targeting his relatives. Accordingly, the record does not compel the conclusion Acosta's membership in a particular social group was or will be at least one central reason for any past or future persecution. *Id.* at 1308.

Although Acosta tried to connect Sarmiento to Rivera, who he claimed was related to someone in the Honduran government, Acosta could only speculate as to the connection. Acosta admitted he lived with his aunt in the capital for three months without being harmed and Sarmiento had not harmed a member of Acosta's family in two years. Although Acosta testified his family members in Honduras only survived by staying inside their houses "locked up" and hired people to work for them, Acosta testified that his father was not wealthy and managed a herd of cattle and thus was able to go about his business. R. at 176-77. Acosta also testified his mentally-ill uncle went outside and had not been harmed by Sarmiento. Substantial evidence therefore supports the BIA's and IJ's determination that Acosta could reasonably and safely relocate within Honduras. *See Rodriguez*, 735 F.3d at 1308.

Finally, despite Acosta's claim Sarmiento was involved with the police, he conceded Sarmiento was arrested and tried for the murders of his grandfather and cousin. As noted above, Acosta could only speculate Sarmiento was connected to

Rivera and there was evidence in the record that Rivera, a drug dealer and criminal, had also been arrested. The record does not compel the conclusion the Honduran government was unable or unwilling to protect Acosta. *See id.*

## B. Claim for CAT Relief

In his petition for review, Acosta also argues he established entitlement to CAT relief, because it is more likely than not that, upon his return to Honduras, he will be tortured with the consent or acquiescence of the government. We "lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto." *Amaya-Artunduaga*, 463 F.3d at 1250. Issues not reached by the BIA are not properly before us. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Even though the BIA addressed Acosta's CAT claim, he failed to raise the issue before the BIA and therefore it is unexhausted. *See Amaya-Artunduaga*, 463 F.3d at 1250. Neither the notice of appeal to the BIA nor Acosta's brief to the BIA challenges the denial of his CAT claim. The petition for review is therefore dismissed for lack of jurisdiction as to Acosta's claim for CAT relief.[2]

**DENIED IN PART; DISMISSED IN PART.**

---

[2] Additionally, to the extent Acosta makes arguments about the IJ's credibility finding, whether his past mistreatment rose to the level of persecution, or whether his proposed particular social group actually qualified as one, these issues are not before us, because the BIA did not reach them. *Gonzalez*, 820 F.3d at 403.