[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13381
Non-Argument Calendar
_____

Agency No. A086-980-156

LEONARD GREEN MALUNGA,
a.k.a. Leonard Malunga Green,
a.k.a. Leonard Malunga,

                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 27, 2018)

Before MARCUS, JORDAN, and HULL, Circuit Judges.

PER CURIAM:

Leonard Green Malunga, a native and citizen of Malawi, entered the United States on March 17, 2000 on a temporary visa that authorized him to stay in the country up to six months.  He overstayed this visa and, on July 29, 2015, the Department of Homeland Security issued a Notice to Appear and sought removal. Mr. Malunga conceded the charge of removability, but filed an application for cancellation of removal.  He also applied for asylum, withholding of removal, and relief under the Convention Against Torture, alleging that his father was beaten (and presumably killed) by the government and he had his finger cut off by the same attackers due to his father's political views, association with a human rights group, and sexual orientation.

The Board of Immigration Appeals affirmed the Immigration Judge's denial of Mr. Malunga's applications for relief.  Now proceeding *pro se*, Mr. Malunga appeals from that final order.  After careful review of the record and the parties' briefs, we dismiss the petition in part and deny the remainder of the petition.[1]

**I**

We are obligated to inquire into subject-matter jurisdiction whenever it may be lacking.  *See Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004).  We review our subject-matter jurisdiction *de novo*.  *See Amaya-Artunduaga v. U.S.*

---

[1] We read Mr. Malunga's *pro se* brief liberally, but "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Ruga v. U.S. Att'y Gen.*, 757 F.3d 1193, 1196 (11th Cir. 2014) (quoting *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)).  The government moved to file its answer brief out of time.  By separate order, that motion is **GRANTED**.

2

*Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).  The government contends that we lack jurisdiction over the IJ's discretionary denial of cancellation of removal and over the dismissal of Mr. Malunga's asylum petition on timeliness grounds. We agree on both accounts.

Our review of the denial of cancellation of removal under 8 U.S.C. § 1229b is limited.   We are prohibited from reviewing "*any* judgment regarding the granting of relief under [§] 1229b," with the exception of "constitutional claims or questions of law."  *See Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549 (11th Cir. 2011) (alterations adopted, emphasis in original) (citing 8 U.S.C. §§ 1252(a)(2)(B)(i) & 1252(a)(2)(D))  *See also Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1209 (11th Cir. 2012) ("We can review no discretionary determinations about cancellation of removal, except those discretionary determinations about which [p]etitioner presents a genuine constitutional claim or question of law.").

Mr. Malunga identifies a question of law—whether his conviction for child abandonment is a crime of child abuse under 8 U.S.C. § 237(a)(2)(i)—but that is not the grounds upon which the IJ's denial of cancellation rested.  Instead, after the BIA remanded Mr. Malunga's case because it determined that child abandonment in Georgia was not categorically a crime of child abuse, the IJ denied cancellation of removal on three other independent grounds.  Mr. Malunga does not raise any

constitutional claim or question of law related to those grounds.  Nor could he. The IJ specifically held that, even if Mr. Malunga met the eligibility requirements, he would deny cancellation of removal as a matter of discretion.  We lack jurisdiction over this discretionary determination, so we must dismiss his petition on this issue.  *See Alhuay*, 661 F.3d at 549.

We likewise lack jurisdiction to review the determination that Mr. Malunga's asylum application was untimely under 8 U.S.C. § 1158(a)(3) because it did not meet the one-year limit or present extraordinary circumstances.  *See Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005).  So, we cannot review Mr. Malunga's claim that the IJ erred by not finding that extraordinary circumstances excused his asylum petition filed sixteen years after his arrival in the United States.  *See id.*; *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002).

## II

Mr. Malunga also appeals the denial of his application for asylum, withholding of removal, and CAT relief.  He contends that the IJ clearly erred in determining that his testimony was not credible.  The government, for its part, argues that substantial evidence supports the denial of the application because Mr. Malunga failed to credibly establish past persecution or a well-founded fear of

4

future persecution and because he failed to provide corroborating evidence to support his claimed persecution.

"When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013). We review factual determinations, including credibility determinations, under the substantial evidence test. *See Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under this test, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotation marks omitted).

"[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application," but "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). An adverse credibility determination must be supported by "specific, cogent reasons," and once that determination is made the burden is on Mr. Malunga to show that the "credibility decision was not supported by 'specific, cogent reasons,' or was not based on substantial evidence." *See id.* (quoting *Forgue*, 401 F.3d at 1287) (alterations adopted). We agree with the government that he has not met this burden.

5

The adverse credibility determination is supported by several specific, cogent reasons:  several critical aspects of Mr. Malunga's testimony before the IJ were contradicted by the available documentary evidence and his own asylum application.  *See Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1049–50 (11th Cir. 2009) (holding that several inconsistencies between testimony before the IJ and applicant's prior statements supported adverse credibility determination); *Ruiz*, 440 F.3d at 1255 ("Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments.").

In particular, Mr. Malunga testified at his April 8, 2016, removal hearing that an unknown group of people came looking for his father in the middle of the night.  His father was not home, so they instead tortured Mr. Malunga by cutting off his finger.  Mr. Malunga testified that he did not go to the hospital for treatment and never saw his father again after the incident.  This story is inconsistent with his application and a police report.  In his application, Mr. Malunga stated that the group who attacked him was from the government (not an unknown group).  When the IJ inquired further about this, Mr. Malunga explained that he was not sure, but presumed it was people from the government because he was a politician and "was fighting with the government."

6

The police report for the incident provides yet a different account. It states that the attack was by a gang of rebels who assaulted Mr. Malunga during a robbery, that one rebel bit his finger, and that he went to the hospital where his finger was amputated. Notably, that police report also states that his father was present during the assault and went to the hospital with Mr. Malunga, which is inconsistent with Mr. Malunga's testimony that he never saw his father after the attack. Given these numerous inconsistencies, substantial evidence supports the adverse credibility determination. *See D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004) (affirming adverse credibility determination when the "IJ noted numerous inconsistencies between D-Muhumed's asylum application, his testimony at the hearing, and the documentary evidence.").

Mr. Malunga's petition for asylum, withholding of removal, and CAT relief rested primarily on his own account of the attack in Malawi. Given the adverse credibility determination, Mr. Malunga was obligated to provide sufficient corroborating evidence to satisfy his burden of proof. *See Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker an applicant's testimony, however, the greater the need for corroborative evidence."); *Forgue*, 401 F.3d at 1287. The BIA explained that Mr. Malunga's limited additional evidence did not support his claim, particularly because it was inconsistent with his testimony and did not support that he was persecuted on the basis of his father's political

7

involvement or his sexual orientation. Without evidence necessary to meet his burden to establish eligibility for asylum or withholding of removal and CAT relief, his petition was properly denied. *See id* at 1287–88. *See also Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891(11th Cir. 2007) (holding that "[t]o qualify for withholding of removal or CAT relief, an alien must establish standards more stringent tha[n] those for asylum eligibility" and, therefore, an alien unable to meet the burden for asylum will be unable to meet the burden for withholding of removal or CAT relief based upon the same facts).

## III

For the foregoing reasons, Mr. Malunga's petition is dismissed in part and denied in part.

**PETITION DISMISSED IN PART; DENIED IN PART.**