[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12190
Non-Argument Calendar
_____

Agency No. A209-007-422

EULALIA ANDRES-DIEGO, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 16, 2020)

Before WILLIAM PRYOR, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

Eulalia Andres-Diego and her two minor children petition for review of the

Board of Immigration Appeals' ("BIA") final order affirming the Immigration

Judge's ("IJ") denial of their application for asylum, withholding of removal, and

relief under the United Nations Convention Against Torture. After careful review, we deny their petition.

## I.

Andres-Diego is a 25-year-old native and citizen of Guatemala. She married Juan De Diego Jacinto in April 2013. The couple welcomed two daughters, A. and M.,[1] in 2013 and 2015. The family lived in San Miguel Acatán, Guatemala, from the time they married until April 2016.

One night in April 2016, three masked men dressed in black and carrying guns came to Andres-Diego's home. The men "pointed guns and demanded [Andres-Diego] give them 10,000 quetzales" or they would kidnap her children and likely kill Andres-Diego. Andres-Diego did not have this money, but the men told her they would come back in a week to collect the sum. Andres-Diego did not know who the men were. She thought the men "belong[ed] to a group" and that "somebody sent them." She believed the men had targeted her because her father-in-law, who lived in the United States, sent her family money once or twice a month. Andres-Diego would pick up these remittances at a service called Intermex. Andres-Diego testified the thieves "probably . . . [thought] that I have money" because of her trips to Intermex.

---

[1] A. and M. are also Guatemala natives and citizens.

2

Scared by the three men's threats, Andres-Diego quickly fled Guatemala with her two young daughters.  She did not report the threats to the Guatemalan police because she had heard from others that "they don't help even if you report." Andres-Diego did not believe she could relocate within Guatemala because she is of Mayan ethnicity; her native language, Kanjobal, is not spoken anywhere else in the country; and she has a "very limited working knowledge of Spanish."  She also feared that "if we return, we will be killed because we did not pay the 10,000 quetzales."

Andres-Diego and her daughters entered the United States on May 10, 2016. The following day, the Department of Homeland Security served them with Notices to Appear, charging them with being removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as noncitizens present in the United States without being admitted or paroled.  Andres-Diego and her children, through counsel, admitted these facts and conceded removability.

In 2017, Andres-Diego applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Andres-Diego's minor daughters were added as derivative beneficiaries of her application.  In support of her asylum claim, Andres-Diego argued that she had been persecuted on account of her membership in two particular social groups ("PSG"): "the Diego Jacinto family

3

who live in the United States;" and "people in [the] Guatemala community who are identified as having access to money." She also submitted that she was persecuted because of her political opinion, exhibited by her refusal to comply with the extortionate demands of the masked men.

Following a hearing, an IJ denied Andres-Diego's and her daughters' applications and ordered them removed to Guatemala. In an oral decision, the IJ found Andres-Diego credible but concluded she had failed to meet her burden of proof on any of her claims. For Andres-Diego's asylum claim, the IJ determined she had not established past persecution. The IJ also found that any persecution Andres-Diego experienced was not related to her membership in a PSG or her political opinions. The IJ then concluded Andres-Diego could not establish a well-founded fear of future persecution. Because Andres-Diego was not eligible for asylum, the IJ also rejected her claim for withholding of removal. Finally, the IJ found the Guatemalan government had not directed or acquiesced to any potential torture of Andres-Diego, defeating her claim for CAT protection.

Andres-Diego appealed to the BIA. The BIA dismissed her appeal and adopted and affirmed the IJ's decision. Andres-Diego and her daughters timely petitioned this Court for review.

4

## II.

"When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005) (per curiam). If the BIA expressly adopts the IJ's reasoning, we will also review the IJ's decision. Id. Here, the BIA expressly adopted the IJ's reasoning, so we review both the IJ and the BIA's decisions. See id. We examine the agency's factual determinations for substantial evidence and we review de novo its conclusions of law. Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016) (per curiam).

## III.

On the record before us, the IJ and the BIA properly denied Andres-Diego's application for asylum, withholding of removal, and protection under the CAT. We first address Andres-Diego's claims for asylum and withholding of removal, then turn to her claim for CAT protection.

## A.

To be eligible for asylum or withholding of removal, a noncitizen must prove she suffered persecution on account of a protected ground. Perez-Sanchez v. U.S. Att'y Gen., 935 F.3d 1148, 1158 (11th Cir. 2019) (quotation marks omitted). This connection between the persecution and the statutorily protected ground is known as the "nexus" requirement. Id. To satisfy the nexus requirement, an

5

asylum applicant must establish that the protected ground was "at least one central reason" for her persecution. Id. (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Protected grounds include "race, religion, nationality, membership in a particular social group, or political opinion." See 8 U.S.C. § 1101(a)(42)(B).

Assuming that Andres-Diego can establish past persecution through evidence of the death and kidnapping threats made against her and her family, she does not show this harm occurred because of her membership in a PSG or her political opinion. We therefore affirm the IJ's denial of her claims for asylum and withholding of removal.

1. Andres-Diego's Proposed PSGs

Andres-Diego claimed membership in two PSGs in support of her claims: being a person identified in the Guatemalan community as having access to money, and being a part of the Diego Jacinto family who live in the United States.[2] Neither PSG, however, supports her eligibility for asylum or withholding of removal.

---

[2] The government contends that Andres-Diego improperly articulates two new proposed PSGs in her opening brief, and thus she has abandoned the two PSGs she proposed to the IJ. To the extent that Andres-Diego reformulated her two proposed PSGs in her brief, we cannot consider them because she did not propose them to the BIA and exhaust her administrative remedies. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) (explaining this Court lacks jurisdiction to consider claims not raised before the BIA). Nevertheless, because we affirm denial of Andres-Diego's application on the merits, we decline to address the distinction made by the government regarding the PSGs Andres-Diego asserted before the IJ, and those she asserts here.

Andres-Diego's first proposed PSG, "people in [a] Guatemala community who are identified as having access to money," is not cognizable because the group is defined by the harm Andres-Diego suffered as a victim of extortion. See Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1198 (11th Cir. 2006) ("The risk of persecution alone does not create a particular social group within the meaning of the [Immigration and Nationality Act]."). Beyond this, asylum applicants who were targeted for extortion solely because of their wealth or perceived wealth cannot show a nexus between their persecution and a protected ground. Compare Rivera v. U.S. Att'y Gen., 487 F.3d 815, 821–23 (11th Cir. 2007) (denying a petition for review of an asylum application because there was "substantial evidence to support the Immigration Judge's finding that the motive of the FARC [a Colombian rebel group] for persecuting the petitioners' [wealthy] family was to raise funds"), with Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1234–35 (11th Cir. 2007) (granting a petition for review because "[a]lthough the FARC did demand financial support from [the asylum applicant], the record as a whole compels the conclusion that the FARC also targeted [him] because of his political activities").

Andres-Diego's second proposed PSG, "the Diego Jacinto family who live in the United States," bears no nexus to the harm she suffered.[3]  Andres-Diego's account of the masked men's extortion and death threats does not show that the men targeted her because she was part of the Diego Jacinto family.  Indeed, Andres-Diego testified that she did not know why the masked men threatened her. She could only guess that the men found out her father-in-law sent her money from the United States because the men saw her visit Intermex.  She did not introduce any evidence of harm befalling any other Diego Jacinto family members in Guatemala.  On this record, Andres-Diego showed no nexus between belonging to the Diego Jacinto family and the extortion she experienced.  See Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1312 (11th Cir. 2019) (denying a petition for review because the asylum applicant did not introduce enough evidence of nexus between a violent attack she suffered and her family's connections to the United States); Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310–11 (11th Cir. 2013) (per curiam) (denying a petition for review because the asylum applicant "failed to show that the harm he feared . . . arose from his [family] membership," and the

_____

[3] We assume, without deciding, that Andres-Diego's family-membership PSG is cognizable under the Immigration and Nationality Act.  See Matter of L-E-A-, 27 I&N Dec. 581, 586 (A.G. 2019) (holding that an asylum applicant proposing a PSG based on family membership "must establish that his specific family group is defined with sufficient particularity and is socially distinct in his society").

8

record established other reasons behind the killing and kidnapping of his family members).

## 2. Andres-Diego's Political Opinion

Finally, Andres-Diego argued before the IJ that her refusal to pay the masked men constituted a political opinion against extortion. Andres-Diego does not repeat these arguments in her brief to this Court, so we cannot consider them. See United States v. Nealy, 232 F.3d 825, 830–31 (11th Cir. 2000) (noting that issues not raised in an initial brief are abandoned).

The record reflects that Andres-Diego and her children were victims of a frightening and serious crime. But evidence that is "consistent with acts of private violence" or that "merely shows that a person has been the victim of criminal activity[] does not constitute evidence of persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam). For all these reasons, the IJ's and the BIA's decisions to deny Andres-Diego asylum and withholding of removal were proper.

### B.

In the proceedings below, Andres-Diego also applied for protection under the CAT. The IJ and BIA denied her CAT relief. But Andres-Diego does not challenge the agency's denial of CAT relief in her brief to this Court. As a result, we do not pass on the merits of her CAT claim. See Kazemzadeh v. U.S. Att'y

9

Gen., 577 F.3d 1341, 1352 (11th Cir. 2009) (holding a petitioner abandoned his

CAT claim by failing to raise more than a "passing reference" to it in his brief).

For the reasons given, we deny Andres-Diego's petition for review.

**PETITION DENIED.**