[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12440
Non-Argument Calendar

_____

Agency No. A208-026-344

HUGO LOPEZ-SANCHEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 1, 2021)

Before MARTIN, BRANCH, and EDMONDSON, Circuit Judges.

PER CURIAM:

Hugo Lopez-Sanchez ("Petitioner"), a native and citizen of Mexico, petitions for review of the order by the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ").  The IJ's decision denied Petitioner's applications for withholding of removal and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  No reversible error has been shown; we deny the petition.

We review only the decision of the BIA, except to the extent that the BIA adopts expressly the IJ's decision.  See Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016).  Because the BIA agreed expressly with parts of the IJ's reasoning in this case, we review the IJ's decision to the extent of that agreement. See id.

We review de novo the BIA's legal conclusions, including whether a proposed group qualifies as a "particular social group" under the Immigration and Nationality Act ("INA").  See id.  Although our review is de novo, we defer to the BIA's interpretation of the phrase "particular social group" if the BIA's interpretation is reasonable.  See id. at 404.

2

We review fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. at 1027. To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). When -- as in this case -- the IJ makes no express credibility determination, we accept the applicant's testimony as credible. See Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007).

An applicant seeking withholding of removal must establish that his "life or freedom would be threatened" in his country based on a statutorily protected ground, including membership in a particular social group. See 8 U.S.C. § 1231(b)(3)(A). The applicant bears the burden of demonstrating that he "more-likely-than-not would be persecuted or tortured" if returned to his country. Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011). To satisfy this burden, the applicant must demonstrate either past persecution based on a protected ground or

3

that it is more likely than not that he will suffer future persecution on account of a protected ground. Id. at 1365.

To establish eligibility for CAT relief, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). The applicant must also show that the torture would be inflicted by or with the acquiescence of the removal country's government. Id. "Acquiescence requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." Id. (quotations omitted).

Petitioner sought withholding of removal based on his fear of future persecution on account of Petitioner's membership in two proposed particular social groups: (1) "Mexicans that own farmland in rural communities and have a higher standard of living than the majority of people in their community;" and (2) "Mexicans in rural communities who receive remittances from family members in the United States, which contributes to their higher standard of living."

Before coming to the United States, Petitioner lived with his parents and siblings in a small town in Veracruz, Mexico. Petitioner's father owned land on which the family grew corn for personal use and grew coffee for commercial sale.

4

Petitioner's sister (Eloina) and her children had a house on the same land. Eloina's husband and Petitioner's brother each lived in the United States and sent remittances back to Eloina and to Petitioner's parents, respectively. Because of the coffee sales and the remittances, Petitioner's family enjoyed a higher standard of living than other members of the community.

As a result of his family's relative wealth, two members of a criminal gang (Omar and Tito) targeted Petitioner's family. In 2006, the gang members left a threatening note inside Eloina's house. In the note, the gang members demanded that Eloina pay them money, threatened to harm Eloina's children, and said the gang knew Eloina had family in the United States. Although the note was delivered to Eloina, Petitioner's father believed the threat was directed toward the entire family because they all lived on the same land and all received money from the United States.

Never did the family report the threat to the police, and never did Eloina pay the gang. Shortly after Eloina received the threatening note, Mexican Marines -- responding to "numerous claims by members of the community" -- arrested Omar and Tito. Eloina and Petitioner's parents continue to live on the family's land, have received no threats since 2006, and have never been harmed.

5

A year earlier (sometime in 2005), members of Omar and Tito's gang killed Petitioner's cousin, Alberto, as revenge after Alberto accused the gang of stealing cattle. Sometime later, Alberto's brother was also killed by gang members. The police never investigated or solved the murders.

Petitioner fears returning to Mexico because he says Mexico is plagued with gang violence. Petitioner says that the government does nothing to protect its citizens from the criminal gangs and that high levels of corruption exist within law enforcement and government leaders.

The IJ denied relief; and the BIA dismissed Petitioner's appeal. About Petitioner's application for withholding of removal, the BIA agreed with the IJ's determination that (1) Petitioner's proposed particular social groups are not cognizable under the INA; and (2) Petitioner had failed to show that the gang targeted Petitioner's family "on account of" a statutorily protected ground. The BIA also agreed with the IJ's conclusion that Petitioner failed to demonstrate eligibility for CAT relief.

For purposes of the INA, the BIA has interpreted the phrase "particular social group" to mean a group of people who "share a common, immutable characteristic." See Gonzalez, 820 F.3d at 404. The group "must also be defined with particularity and socially distinct within the society in question." Id.

6

(quotations omitted).  In other words, the group must "be discrete and have definable boundaries" and may not be "amorphous, overbroad, diffuse, or subjective."  Id.

Here, Petitioner failed to establish membership in a "particular social group" within the meaning of the INA.  The BIA and the IJ determined reasonably that Petitioner's first proposed social group -- "Mexicans that own farmland in rural communities and have a higher standard of living than the majority of people in their community" -- was overbroad and lacked social distinction.  The BIA has determined that terms describing actual or perceived wealth are "too subjective, inchoate, and variable to provide the sole basis for membership in a particular social group."  See Matter of A-M-E- & J-G-U-, 24 I. & N. Dec. 69, 76 (BIA 2007).  Petitioner has also failed to produce evidence demonstrating that owners of farmland are considered a discrete class within his community or are viewed by his community as socially distinct.  See Matter of W-G-R-, 26 I. & N. Dec. 208, 214-15 (BIA 2014) (explaining that whether a group of "landowners" constitutes a sufficiently discrete class depends on the individual society in question).

In a similar way, Petitioner's second proposed social group -- "Mexicans in rural communities who receive remittances from family members in the United States, which contributes to their higher standard of living" -- is also impermissibly

7

overbroad and subjective.  This proposed social group shares the same subjective "higher standard of living" language already discussed.  We have also rejected as overbroad and "wholly amorphous" a similar proposed social group comprised of "Mexican citizens targeted by criminal gangs because they have been in the United States and have families in the United States."  See Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1304, 1311 (11th Cir. 2019).  In making that determination, we noted that the number of Mexicans who have family in the United States constitutes a significant percentage of Mexico's total population.  See id.

Substantial evidence also supports the BIA's and IJ's determination that Petitioner failed to demonstrate a nexus between the feared future persecution and a protected ground.  To demonstrate eligibility for withholding of removal, an applicant must show that a protected ground would be "at least one central reason" for his persecution.  See Perez-Sanchez v. U.S. Att'y Gen., 935 F.3d 1148, 1158 (11th Cir. 2019).  To satisfy this burden, an "applicant must present specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of" a protected ground.  Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006).

The record compels no conclusion that Petitioner was or would be targeted by gang members on account of his membership in the proposed social groups.

8

First, the record demonstrates that gang activity is commonplace in Mexico. Moreover, the record evidences that -- to the extent the gang targeted Petitioner's sister and parents -- the gang was motivated by a desire to extort money, not by a protected ground. That several members of Petitioner's community complained about being victimized by Omar and Tito's gang further undercuts a finding that Petitioner's family was singled out for mistreatment.[*] Evidence of private violence or criminal activity is insufficient to establish persecution on account of a protected ground. See Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310 (11th Cir. 2013).

About Petitioner's application for CAT relief, substantial evidence supports the BIA's and the IJ's determination that Petitioner failed to show that he more-likely-than-not would be tortured by, or with the acquiescence of, the Mexican government. Nothing evidences that the Mexican police had prior knowledge of the gang's threat to Petitioner's family and refused to intervene. Nor did Petitioner's family report the 2006 threatening note to the police. Petitioner presented some evidence of police corruption within Mexico and evidence that gang violence remains prevalent. Nevertheless, that the Mexican military arrested Omar and Tito shows that the Mexican government took some active steps to combat gang crime and violence rather than merely acquiescing.

---

[*] Petitioner has also shown no connection between the harm inflicted on Petitioner's cousins -- crimes Petitioner says were motivated by revenge -- and Petitioner's proposed social groups.

The IJ's and the BIA's decision that Petitioner was unentitled to withholding of removal or to CAT relief is supported by reasonable, substantial, and probative evidence. Nothing on this record compels us to reverse that decision.

PETITION DENIED.