[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14182
Non-Argument Calendar

_____

Agency No. A026-686-648

SHEHZA KHAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 21, 2021)

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Shehza Khan, a native and citizen of Pakistan, petitions this Court for review

of the Board of Immigration Appeals' final order affirming the immigration judge's

denial of his application for deferred removal based on the Convention Against Torture. He argues that the BIA and the immigration judge failed to give reasoned consideration to evidence in the record showing that it was more likely than not that he would be tortured if he were removed to Pakistan. We disagree and deny the petition.

## I.

Khan entered the United States in 1984 as a nonimmigrant. In 2016, the Department of Homeland Security served him with a notice to appear and charged him with removability following multiple convictions, including several for drug-trafficking offenses.

Khan initially appeared *pro se*, but the immigration judge found that he was not competent to represent himself. Khan's new counsel admitted the factual allegations against Khan, and the immigration judge found that Khan was removable as charged.

Khan then filed an application for withholding of removal under the CAT. *See* 8 C.F.R. §§ 1208.16(d)(2), 1208.17(a). He submitted several documents in support of his application, including articles explaining that Pakistani law enforcement engaged in widespread torture to obtain confessions from people in custody and articles that detailed Pakistan's denial of mental illness and that described a lack of access to mental health care in the country. He also attached an excerpt from the

State Department's "Pakistan 2017 Human Rights Report," which discussed torture and prison conditions in the country.

Khan also testified in support of his application. He stated that he had no friends or family in Pakistan, that he feared he would be homeless if removed to Pakistan because he would not have access to needed medications, and that he was scared of being tortured by Pakistani officials because he had monitored radical Muslims for U.S. law enforcement. He also stated that he expected to be imprisoned in Pakistan because he would be a criminal deportee and would be targeted because he would be perceived as mentally ill.

After hearing Khan's testimony, the immigration judge first noted that Khan's counsel "conceded that [Khan] was only eligible for deferral of removal under" the CAT and explained that Khan was ineligible for withholding of removal because he had been convicted of a "particular serious crime." He then concluded that the record did not establish that Khan was more likely than not to be tortured in the future if returned to Pakistan and issued an oral decision denying Khan's request for deferral of removal. Khan administratively appealed. The BIA agreed that Khan was eligible only for deferral of removal, but remanded the case to the immigration judge with instructions to make specific findings regarding the likelihood that: (1) Khan would not have access to his medication in Pakistan; (2) he would engage in behavior that would bring him to the attention of Pakistani officials; (3) he would disclose his

3

activities on behalf of western law enforcement to Pakistani officials (or that the information would be otherwise discovered by Pakistani officials); and (4) that information would lead to his torture. The BIA also directed the immigration judge to clarify whether it had found that Khan in fact cooperated with western law enforcement or whether it merely accepted his testimony as true for purposes of its analysis.

At a second hearing before a new immigration judge, Khan testified consistent with his statements from the first hearing. He also offered an article discussing Pakistan's mental health issues, which outlined a program that provides mentally ill Pakistani citizens with medications and treatments for $20-$30 per year. But he testified that he did not take medication for his delusional disorder because he knew for a fact that he was not delusional.

But the psychiatric evaluation that he offered into evidence disagreed. In it, the psychiatrist diagnosed him with a "[d]elusional disorder, grandiose type, continuous" and an "[a]djustment disorder with mixed anxiety and a depressed mood." The evaluation also noted that Khan was able to work but may refuse to do so due to his "grandiosity," which leads him to believe that he is above taking on what he considers to be unimportant work. And it stated that, if deported to Pakistan, it was more likely than not that his delusional disorder would directly cause him to engage in behavior that would draw the attention of Pakistani officials and, if

confronted, would compel him to discuss his belief that he had previously worked as a confidential informant for various United States agencies.

In his decision, the immigration judge stated that he would "assume that [Khan was] sincere in his belief that he fears he would be tortured due to his alleged past work with U.S. law enforcement agencies" but noted "the absence of reliable corroboration" for his alleged work as a confidential informant. The immigration judge also stated that he had "considered all the documentary and testimonial evidence in this case" and that his "failure to comment on a specific exhibit or particular testimony" did not mean that he had failed to consider it.

The immigration judge also addressed each of the four suppositions that the BIA identified. First, he acknowledged that the record showed shortages of medication in Pakistan and that Khan would not have family or friends to support him there. But he cited the report that Khan produced establishing that the mentally ill in Pakistan could obtain medication for $20 to $30 per person per year and that Khan's psychiatrist had determined that he was capable of working to support himself. Accordingly, the immigration judge found that Khan had not demonstrated that he would more likely than not lack access to his medication in Pakistan.

Second, the immigration judge found that it was more likely than not that Khan would engage in behavior that would bring him to the attention of Pakistani officials. And, third, he found that it was more likely than not that Khan would

disclose his activities on behalf of western law enforcement to Pakistani officials. But the immigration judge nonetheless found that Khan had not demonstrated that it was more likely than not that information about his alleged work with U.S. law enforcement agencies would lead to his torture. Instead, the immigration judge found that "the greater weight of the evidence indicates that the torture by the Pakistani government is primarily inflicted upon perceived political opponents, religious minorities, and suspected terrorists." And Khan did not fall into any of those categories.

In support, the immigration judge noted that the State Department's Human Rights Report did not comment on whether the Pakistani government tortured individuals suspected of cooperating with U.S law enforcement. And the immigration judge concluded that, in any event, "it [was] more likely that Pakistani authorities would dismiss [Khan] as a mentally ill individual than that he would be deemed a person of interest from whom the authorities would want to extract information." Finally, the immigration judge found that Khan had failed to show that any mistreatment of the mentally ill was "borne out of a specific intent to harm mentally ill individuals." Accordingly, the immigration judge denied Khan's request for deferral of removal.

Khan appealed to the BIA again. The BIA adopted and affirmed the immigration judge's decision, noting the specific findings that the immigration judge

6

made on remand. It explained that Khan had not demonstrated clear error in the immigration judge's finding that the record lacked evidence regarding torture of Pakistanis suspected of cooperating with U.S. law enforcement. And it rejected his argument that the immigration judge's finding that Khan lacked a clear probability of being tortured was based solely on his lack of inclusion in the three groups most likely to be tortured. Finally, it cited to the regulations defining the term "torture," stated that Khan had not shown clear error in the immigration judge's findings that any potential mistreatment would not amount to torture, and noted that "[h]arm inflicted due to lack of resources or misunderstanding of the nature of mental illness does not fall within the scope of the protection offered by the [CAT]." Khan's petition for review by this Court timely followed.

## II.

When the BIA issues a decision expressly adopting the immigration judge's decision, we review both decisions. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013). The BIA reviews an immigration judge's findings of fact under a "clearly erroneous standard" and questions of law *de novo*. 8 C.F.R. § 1003.1(d)(3)(i)–(ii).

We review *de novo* whether the BIA afforded a petitioner's claims reasoned consideration. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019). If we are not convinced that the BIA evaluated the entire evidentiary record before reaching a

decision, we will remand for lack of reasoned consideration and will not analyze the BIA's legal or factual conclusions. *Id.* Otherwise, we review the BIA's legal conclusions *de novo* and its factual findings for substantial evidence. *See id.* Under the highly deferential substantial-evidence test, we may not reweigh the evidence from scratch. *See Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1243 (11th Cir. 2006). Instead, we must view the record evidence in the light most favorable to the agency and draw all reasonable inferences in favor of its decision. *See id.*

The BIA fails to give reasoned consideration to a claim when it (1) "misstates the contents of the record, [(2)] fails to adequately explain its rejection of logical conclusions, or [(3)] provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Ali*, 931 F.3d at 1334. The BIA must consider all of the applicant's evidence and issues and "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (quoting *Vergara-Molina v. INS*, 956 F.2d 682, 685 (7th Cir. 1992)). But the BIA does not need to specifically address each piece of evidence presented. *Ali*, 931 F.3d at 1333. Instead, it must discuss only the evidence in "the record [that] would compel a different outcome, absent the discussion of [that] evidence." *Id.* at 1334.

Protection under the CAT may be granted in the form of either withholding of removal or deferral of removal. 8 C.F.R. § 208.16(c)(4). An alien who has been convicted of a "particularly serious crime" is ineligible for withholding of removal under the CAT. 8 C.F.R. § 208.16(d)(2)–(3). But such an alien can still receive deferral of removal if the alien establishes that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *see* 8 C.F.R. § 208.17(a). To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 208.18(a)(5). And that act must be committed by the proposed country of removal's government or the government must be aware of the torture and fail to intervene. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.18(a)(1)).

After a thorough review of the record, we are satisfied that the BIA and immigration judge gave reasoned consideration to all of the evidence and issues that Khan put forth. Both accurately stated the contents of the record, adequately explained their rejection of Khan's conclusions, and provided reasonable and responsive justifications for their decisions. *See Ali*, 931 F.3d at 1334. The immigration judge explicitly considered Khan's testimony, psychiatric evaluation, and article on the treatment of mental illness in Pakistan as well as the State Department report. Based on evidence that Khan produced, he determined that Khan

had not established that it was more likely than not that he would not have access to his medication in Pakistan. But he agreed with Khan that he had established that it was more likely than not that he would engage in behavior that would bring him to the attention of Pakistani officials and would disclose his activities on behalf of U.S. law enforcement agencies. Still, the immigration judge determined that Khan had not established that it was more likely than not that information about his activities would lead to his torture based on the lack of evidence in the record that the Pakistani government tortures individuals who have assisted United States law enforcement agencies. Accordingly, both the immigration judge and the BIA gave reasoned consideration to both the evidence and Khan's arguments.

Further, substantial evidence supports the BIA and immigration judge's factual findings, and we agree with their legal conclusions. Khan did produce evidence that it is more likely than not that he would garner the attention of Pakistani officials and be unable to stop himself from disclosing his alleged activities on behalf of U.S. law enforcement agencies. But he did not produce any evidence that the Pakistani government tortures individuals based on such activities. And he failed to establish a likelihood that he will be tortured for that or any other reason if removed to Pakistan. Accordingly, we deny the petition.

**PETITION DENIED.**