[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10528

Non-Argument Calendar

_____

FREDI ELISEO CUX-LOPEZ,
FLORIDALMA CUX-LOPEZ,

                                                        Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-894-341

_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Guatemalan citizens, Floridalma Cux-Lopez and her son Fredi Cux-Lopez (collectively "Petitioners") seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). On appeal, Petitioners argue that the BIA erred by determining that they were ineligible for asylum, withholding of removal, and CAT relief. After reviewing the record and the applicable law, we affirm.

## I.    Denial of Asylum & Withholding of Removal

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's decision. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). We do not consider issues that the BIA did not reach. *Id.*

We review *de novo* the BIA's legal conclusions, such as whether a petitioner's claimed social group qualifies as a particular social group under the INA. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Our review is informed by *Chevron*[1] deference, meaning that if a statute that the agency administers

---

[1] *Chevron, U.S.A., Inc. v Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

is silent or ambiguous, we determine whether the agency's interpretation is permissible and if so, defer to that interpretation. *Id.* Because the INA does not clearly define the phrase "particular social group," we have deferred to the BIA's interpretation as set forth in its unpublished, three-member decisions. *Id.* at 1307; *see also Gonzalez*, 820 F.3d at 404 ("We have previously held that the BIA's interpretation of the phrase 'particular social group' in 8 U.S.C. § 1231(b)(3)(A) is entitled to *Chevron* deference because the INA does not define the phrase and it is ambiguous.").

The noncitizen bears the burden of establishing that she is entitled to asylum, which requires the noncitizen to establish, with specific and credible evidence, that: (1) she suffered past persecution on account of a statutorily protected ground; or (2) she has a well-founded fear that she will be persecuted on account of a statutorily protected ground. *Id.*; 8 C.F.R. § 1208.13(a), (b). The statutorily protected grounds include, among other things, membership in a particular social group. 8 U.S.C. § 1158(b)(1)(B)(i).

To qualify as a particular social group under the INA, the group must be composed of members who "share a common, immutable characteristic" that the group members either cannot change, or should not be forced to change, "because it is fundamental to their individual identities or consciences." *Perez-Zenteno,* 913 F.3d at 1309-10 (internal quotation marks and citation omitted). The "particular social group also must be defined with particularity," meaning the group has discrete, definable boundaries, and is not vague or amorphous. *Id.* at 1310 (internal quotation marks and

citation omitted).  Moreover, the group should be seen within the given society as a "sufficiently distinct group." *Id.* (internal quotation marks and citation omitted).  Importantly, the particular social group cannot be circularly defined by the persecution of its members, meaning the particular social group's defining attribute cannot be its risk of persecution stemming from being targeted by gangs.  *Id.* at 1309-10 (holding that the BIA reasonably determined that the noncitizen's proposed social group of "Mexican citizens targeted by criminal groups because they have been in the United States and have families in the United States" was impermissibly circular) (underline in original); *see also Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1344-45 (11th Cir. 2019) (holding that the BIA reasonably determined that the noncitizen's proposed social group of "women in Mexico who cannot leave domestic relationships" was impermissibly circular); *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (holding that the BIA did not err in finding incognizable a noncitizen's proposed social group of "members of a family targeted by a drug-trafficking organization because a family member sought criminal justice against a member of the drug-trafficking organization" because the social group was impermissibly defined by the risk of persecution).

Additionally, the petitioner must establish a nexus between the feared persecution and a statutorily protected ground by demonstrating that one of the protected grounds was or will be at least one central reason for persecuting her. 8 U.S.C. § 1158(b)(1)(B)(i).  Evidence "consistent with acts of private violence or the petitioner's failure to cooperate with guerillas," or

evidence merely showing the petitioner "has been a victim of criminal activity," is insufficient to support a finding that the noncitizen faced persecution based on a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

A noncitizen is eligible for withholding of removal if she shows that, upon return to her country, she will be persecuted in that country because of a protected ground, such as her membership in a particular social group. 8 U.S.C. § 1231(b)(3). The standard for withholding of removal is more stringent than that for asylum, meaning if the petitioner fails to meet the standard of proof for asylum, she necessarily cannot meet the standard for withholding of removal. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007).

Before the BIA and IJ, Cux-Lopez framed her proposed particular social group as "Guatemalan mothers fleeing personal gang persecution and that of their young student children." Fredi framed his proposed particular social group as "young Guatemalan male students who are targeted by gang members for repeated rejection of gang recruitment to protect themselves and their family members." At the hearing before the IJ, Petitioners presented evidence that they suffered from and feared gang violence. Fredi stated that when he was about 10 years old, he began experiencing repeated pressure to join gangs that chased, attacked, threatened, and harassed him. He indicated that some of those gang encounters resulted in him getting bruised, but his mother acknowledged that he never received any medical attention for those injuries.

Petitioners also witnessed the murder of their pastor, and Cux-Lopez was grabbed by one of the assailants and had her phone stolen so that she could not report the crime. Given these experiences, Petitioners feared leaving their home, and Fredi quit attending school due to this fear. Cux-Lopez further stated that she has family living in Guatemala City, about a four to five-hour drive from her hometown. However, her reluctance to relocate within Guatemala was not based on fear, but instead because she has no money and her siblings told her she could not move there.

After considering Petitioners' testimony and the other evidence introduced, including reports regarding Guatemala's human rights conditions, the IJ denied the Petitioners' applications for asylum and withholding of removal, which the Petitioners appealed to the BIA. The BIA, in a single-member decision relying on precedent from this Court and the BIA, affirmed the IJ's decision, concluding that Petitioners failed to sufficiently establish their membership in a particular social group due to the circular nature of their proposed social group and the lack of a nexus between their claimed persecution and their proposed social group.

We affirm the BIA's decision.[2] As to asylum, Petitioners did not meet their burden of proof under the INA. Petitioners' basis for asylum was that they are members of a particular social group and face a risk of persecution due to that status—specifically, as

_____

[2] On appeal, Petitioners also argue that they demonstrated past persecution. Because the BIA did not reach that issue, Petitioners' argument is not properly before the Court. *Gonzalez*, 820 F.3d at 403.

"Guatemalan mothers fleeing personal gang persecution and that of their young student children" and "young Guatemalan male students who are targeted by gang members for repeated rejection of gang recruitment to protect themselves and their family members." However, the definition of their "particular social groups" is circular in that the risk of persecution defines the very risk they fear. Cux-Lopez's proposed social group's defining attribute is the risk of persecution stemming from being a mother with a young student child fleeing gang persecution, which is the definition of an impermissibly circular social group. *Perez-Zenteno*, 913 F.3d at 1310. Fredi's proposed social group suffers the same fate, for his proposed social group's defining attribute is the fact that he has been targeted by gang members. *Rodriguez*, 735 F.3d at 1310 (holding that "family [members] *targeted by* a drug-trafficking organization" was an impermissibly circular social group) (emphasis added). Thus, the proposed groups were not legally cognizable, and because they asserted no other protected ground, they could not establish the requisite nexus between the claimed persecution and a protected ground. 8 U.S.C. § 1158(b)(1)(B)(i). Moreover, Petitioners' fear of gang-related violence directed towards them, while obviously troubling, does not establish a widespread fear of violence against every Guatemalan mother or young student. The same, as a matter of statutory interpretation and application, is true for Fredi who defined his proposed social group as all "young Guatemalan male students" targeted by gangs. *Ruiz*, 440 F.3d at 1258. As such, the BIA did not err in affirming the IJ's denial of Petitioners' application for asylum. Likewise, because Petitioners are not eligible for

asylum, they necessarily cannot establish their eligibility for withholding of removal, and the BIA did not err in affirming the IJ's denial of such relief. *Rodriguez Morales*, 488 F.3d at 891.

## II.    Denial of CAT Relief

We review the BIA's factual findings for substantial evidence, wherein we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Perez-Zenteno*, 913 F.3d at 1306 (internal quotation marks omitted) (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*)). Under this standard of review, "we must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence" in consideration of the entire record. *Id.* (internal quotation marks omitted) (quoting *Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004)).

To be eligible for CAT relief, the noncitizen must meet a higher burden of proof than for asylum eligibility and show that she will more likely than not be tortured if she returned to the designated country of removal. *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(2)). All relevant evidence must be considered, including the applicant's ability to relocate and information regarding conditions within the country. 8 C.F.R. § 1208.16(c)(3). "Torture" is defined as an intentionally inflicted "extreme form of cruel and inhuman treatment" that includes "severe pain or suffering" which can be either mental or physical. 8 C.F.R. § 208.18(a)(1), (2).

Importantly, CAT only protects noncitizens from torture that is being inflicted, instigated, or acquiesced to by a public official or another individual acting in his or her official capacity. *Lingeswaran*, 969 F.3d at 1293. For a public official to acquiesce to the torture, the public official must have awareness of the activity before it occurs and be aware of his or her responsibility to intervene to prevent the activity. *Id.* A government does not acquiesce to torture when it "actively, albeit not entirely successfully, combats the alleged torture." *Lingeswaran*, 969 F.3d at 1294 (internal quotation marks omitted) (quoting *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004)).

Before the IJ, Petitioners only presented evidence of criminal gang activity by private actors they directly experienced or witnessed. Although their evidence showed that crime rates were high in Guatemala, the record does not demonstrate that the Guatemalan government inflicted, instigated, or acquiesced to any activities that constitute torture under CAT. Although perhaps woefully inadequate and thus far unsuccessful, Petitioners' evidence nevertheless did show some modest efforts on the part of the Guatemalan government to curb the violence. Additionally, Petitioners never reported the incidents of violence they personally experienced to Guatemalan officials. Based on this evidence, the IJ denied Petitioners' application for CAT relief, and the BIA affirmed the denial.

Here, the record, taken as a whole, does not support a finding that Petitioners would more likely than not be tortured with

10                Opinion of the Court                23-10528

the acquiescence of the Guatemalan government upon their return.  8 C.F.R. § 1208.16(c)(2), (3); *Perez-Zenteno*, 913 F.3d at 1306; *Lingeswaran*, 969 F.3d at 1293-94.  While Petitioners may understandably be afraid of continued violence in Guatemala, their reasonable fears unfortunately do not satisfy the heightened standard to be eligible for CAT relief.

**PETITION DENIED.**